**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-4741

———

MARIO RESTREPO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

———

On Petition for Review of a Final Order of
the Board of Immigration Appeals
(Agency No. A041-383-831)

———

Argued January 26, 2010

Before:  FUENTES and FISHER, Circuit Judges,
and CONNER,[*] District Judge.

———

[*] Honorable Christopher C. Conner, United States District
Judge for the Middle District of Pennsylvania, sitting by
designation.

(Filed: August 16, 2010)

Thomas E. Moseley, Esq. [ARGUED]
One Gateway Center
Suite 2600
Newark, NJ 07102

Counsel for Petitioner

Liza S. Murcia, Esq. [ARGUED]
Ari Nazarov, Esq.
Jennifer P. Williams, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Counsel for Respondent

_____

OPINION OF THE COURT

_____

CONNER, District Judge.

Petitioner Mario Restrepo ("Restrepo"), a native and citizen of Colombia and a lawful permanent resident of the United States, filed the instant petition to prevent his removal from this country based on the determination of the Board of

2

Immigration Appeals ("BIA") that he committed an "aggravated felony" pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1101(a)(43)(A). In 1994, Restrepo was convicted of "aggravated criminal sexual contact" under N.J. Stat. Ann. § 2C:14-3(a). Restrepo argues that this conviction does not qualify as an aggravated felony under the Immigration and Nationality Act ("INA"). We disagree and, as a result, we conclude that we lack jurisdiction to review the BIA's final order of removal. See 8 U.S.C. § 1252(a)(2)(C). Restrepo also contends that the removal proceedings brought against him are time-barred, for they did not commence until a decade after his conviction was imposed. We reject this argument as well and we will dismiss Restrepo's petition.

I.

On March 22, 1994, Restrepo's daughter, Lina, was interviewed by the police. She disclosed that on several occasions her father had touched her breast and vagina through her clothing with his hands. Police questioned Restrepo about these accusations and he admitted that he first touched his daughter inappropriately in 1990, and he had done so intermittently for the next four years. Restrepo was charged with third degree aggravated criminal sexual contact in violation of N.J. Stat. Ann. § 2C:14-3(a). Under this statutory provision, "[a]n actor is guilty of aggravated criminal sexual contact if he commits an act of sexual contact with the victim under any of the circumstances set forth in 2C:14-2(a)(2) through (7)." N.J. Stat. Ann. § 2C:14-3(a). Restrepo pled guilty to a state indictment which charged that he committed aggravated sexual contact with a victim of at least thirteen years of age, but less than sixteen years of age, a violation of 2C:14-2(a)(2). He was

3

sentenced to 364 days in prison and five years' probation. Restrepo has no criminal history which post-dates this conviction.

In 2004, ten years after his guilty plea, the United States Department of Immigration and Custom Enforcement ("USICE") served Restrepo with a notice to appear and charged him as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for commission of an aggravated felony, to wit: sexual abuse of a minor. Restrepo admitted the factual allegations contained in the notice to appear and conceded removability as charged, but he applied for a waiver of removability. A hearing on Restrepo's waiver request was held on December 23, 2004, after which the immigration judge found that Restrepo was removable and denied his application for waiver. Restrepo appealed this decision, and the BIA affirmed on February 17, 2006. Restrepo filed a petition for review, and he also filed a motion to reopen proceedings with the BIA, requesting that the BIA adjust his status to that of a lawful resident pursuant to 8 U.S.C. § 1255. The BIA denied Restrepo's motion to reopen on July 20, 2006. Thereafter, Restrepo filed a second petition with this Court, seeking review of the BIA's July 20 order. On August 11, 2006, the Court consolidated the petitions. The government then filed an unopposed motion for remand to the BIA on October 12, 2006. This motion was granted on April 11, 2007, and the BIA reaffirmed the decision of the immigration judge on November 30, 2007. Restrepo now presents the instant petition.

## II.

We have jurisdiction to review final orders of removal

4

pursuant to 8 U.S.C. § 1252(a).  Congress has stripped the Court of jurisdiction, however, to review an order to remove an alien who commits an aggravated felony.  See § 1252(a)(2)(C).  We nonetheless retain jurisdiction to address this jurisdictional prerequisite—or, more precisely, "whether an alien was convicted of a non-reviewable aggravated felony."  Stubbs v. Att'y Gen., 452 F.3d 251, 253 n.4 (3d Cir. 2006).  The question of whether an alien's offense constitutes an aggravated felony is reviewed de novo as it implicates a purely legal question that governs the appellate court's jurisdiction.  See Valansi v. Ashcroft, 278 F.3d 203, 207 (3d Cir. 2002).  In addition, we possess jurisdiction to hear "constitutional claims and questions of law presented in petitions for review of final removal orders," even for those aliens convicted of an aggravated felony.  Papageorgiou v. Gonzales, 413 F.3d 356, 358 (3d Cir. 2005).  Our review of such claims is de novo.  See De Leon-Reynoso v. Ashcroft, 293 F.3d 633, 635 (3d Cir. 2002).  Restrepo's statute

5

of limitations claim falls into this latter category.[1]  Finally, in the proceedings below, the BIA adopted and affirmed the decision of the immigration judge and provided additional reasoning in support of its decision.  Thus, we will review both the decision of the immigration judge and the decision of the BIA.  See Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004).

III.

This petition presents two principal issues for our

---

[1] Somewhat surprisingly, Restrepo also requests that we remand his case to the BIA for disposition of his application to adjust his status to that of a lawful resident.  We note that the BIA previously addressed this issue.  It concluded that Restrepo failed to show that he was eligible for a status adjustment when it denied his motion to reopen.  Moreover, the BIA found Restrepo inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) for engaging in "acts which constitute the essential elements of a crime involving moral turpitude" and it noted that it had already held that Restrepo could not obtain a § 212 waiver of removability.  Restrepo contends that these holdings were erroneous.

We lack jurisdiction to review the BIA's denial of Restrepo's application.  Under 8 U.S.C. § 1252(a)(2)(B), "no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section . . . 245 [8 U.S.C. § 1255, dealing with adjustment of status], or (ii) any other decision or action of the Attorney General . . . the authority for which is specified . . . to be in the discretion of the Attorney General[.]"

6

consideration: (1) whether Restrepo is removable for conviction of an aggravated felony—specifically, sexual abuse of a minor, and (2) whether the removal proceedings against Restrepo are time-barred. The Court will address these issues in turn.

A. *Was Restrepo Convicted of an Aggravated Felony?*

The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The term "aggravated felony" applies not only to federal offenses, but also to violations of state law. See 8 U.S.C. § 1101(a)(43); Carachuri-Rosendo v. Holder, ___ U.S. ___, 177 L. Ed. 2d 68, 78 n.1 (Sup. Ct. June 14, 2010). The INA defines aggravated felony to include, *inter alia*, "murder, rape, or sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A). The question *sub judice* is whether a conviction for aggravated criminal sexual contact, in violation of N.J. Stat. Ann. § 2C:14-3(a), constitutes the aggravated felony of sexual abuse of a minor under the INA.

The Supreme Court has recognized that several of the offenses listed in the INA—including sexual abuse of a minor—do not refer to "specific acts in which an offender engaged on a specific occasion," or "the specific way in which an offender committed the crime," but rather, they "must refer to generic crimes." Nijhawan v. Holder, ___ U.S.___, 129 S. Ct. 2294, 2298, 2300 (2009). Accordingly, we employ the "categorical approach" of Taylor v. United States, 495 U.S. 575 (1990), to determine whether an alien's conviction constitutes sexual abuse of a minor under the INA. Nijhawan, __U.S. at _, 129 S. Ct. at 2300. The categorical approach requires a two step analysis: first, we must ascertain the definition for sexual

7

abuse of a minor, and second, we must compare this "federal" definition to the state statutory offense in question—in this case, aggravated criminal sexual contact under N.J. Stat. Ann. § 2C:14-3(a). See Singh v. Ashcroft, 383 F.3d 144, 153 (3d Cir. 2004). Ordinarily, the categorical approach "prohibits consideration of evidence other than the statutory definition of the offense, thus precluding review of the particular facts underlying a conviction." See Stubbs, 452 F.3d at 253-54 (citing Singh, 383 F.3d at 147-48). However, where, as here, "a statute criminalizes different kinds of conduct, some of which would constitute [aggravated felonies] while others would not, the court must apply a modified categorical approach by which a court may look beyond the statutory elements to determine the particular part of the statute under which the defendant was actually convicted." United States v. Stinson, 592 F.3d 460, 462 (3d Cir. 2010). If conduct that meets the federal definition of sexual abuse of a minor is *necessary* for a conviction under N.J. Stat. Ann. § 2C:14-3(a), then Restrepo's conviction under N.J. Stat. Ann. § 2C:14-3(a) qualifies as a conviction for sexual abuse of a minor and, by extension, an aggravated felony for which he is removable. See Singh, 383 F.3d at 153 ("Of course it is irrelevant that sexually abusing a minor may be *sufficient* for conviction under the statute; what matters is whether such conduct is *necessary* for such a conviction." (emphasis in original)). If, however, the offense prohibited by N.J. Stat. Ann. § 2C:14-3(a) is categorically *broader* than the federal definition of sexual abuse of a minor, then Restrepo's conviction does not render him removable.

1. *Defining Sexual Abuse of a Minor*

Our first task is to define the phrase "sexual abuse of a

minor," as used in § 1101(a)(43). The INA contains no definition of this phrase, but three United States Code sections—18 U.S.C. §§ 2242, 2243, and 3509(a)—include definitions of sexual abuse. Restrepo asserts that the proper definition of sexual abuse of a minor appears in § 2243. The government disagrees and contends that the definition of sexual abuse of a minor is not clear and unambiguous. Thus, the government argues that we must apply Chevron deference to the BIA's interpretation of this phrase, which is set forth in Matter of Rodriguez-Rodriguez, 22 I. & N. Dec. 991 (BIA 1999). Under the familiar principles of Chevron, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer."[2] Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984). Furthermore, we have explained that Chevron deference applies in general to the legislative framework erected by the INA. Drakes v. Zimski, 240 F.3d 246, 250 (3d Cir. 2001).

When confronted with a potential Chevron application, we administer a three-step analysis. First, we examine the language of the statute to ascertain whether its meaning is plain and unambiguous in light of the specific dispute at hand. Lee v.

---

[2] By statute, the Attorney General is entrusted with the administration and enforcement of the INA, which states that the "determination and ruling by the Attorney General with respect to questions of law shall be controlling." 8 U.S.C. § 1103(a)(1). The Attorney General, in turn, has delegated this authority to the BIA. 8 C.F.R. § 3.1(d)(1).

Ashcroft, 368 F.3d 218, 222 (3d Cir. 2004). When the language of the statute is clear, our inquiry ends. Steele v. Blackman, 236 F.3d 130, 133 (3d Cir. 2001). When it is unclear, we must endeavor to discern congressional intent by utilizing various tools of statutory construction. Lee, 368 F.3d at 222. If this endeavor is unsuccessful, we may defer to the interpretation of the statute derived by the appropriate executive agency, provided that the interpretation is reasonable. Id.; see also Steele, 236 F.3d at 133 (noting general applicability of Chevron deference to BIA interpretations of the INA).

Section 1101(a)(43)(A) defines "aggravated felony" to include "murder, rape, or sexual abuse of a minor." The INA provides no further definition or cross reference expounding the phrase "sexual abuse of a minor" except to state that it "applies to an offense . . . whether in violation of Federal or State law." 8 U.S.C. § 1101(a)(43).

In the past we have observed that, as a matter of general structure and context, several subsections in § 1101(a)(43) define aggravated felonies by cross-referencing particular criminal provisions of the United States Code and by providing parenthetical explanations. See Patel v. Ashcroft, 294 F.3d 465, 470-71 & n.7 (3d Cir. 2002). For example, § 1101(a)(43)(M) defines as an aggravated felony "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000[,] or . . . is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000[.]" We have explained that the parenthetical explanations in these particular subsections are descriptive in nature, and "intended only as a general illustration of the referenced criminal statutes," to "assist the reader who is

10

attempting to determine whether a particular offense constitutes an aggravated felony." Patel, 294 F.3d at 471.

In other § 1101(a)(43) subsections, explanatory parentheticals serve to restrict or limit those offenses which may constitute an aggravated felony under the INA. See id. at 472. For example, § 1101(a)(43)(F) defines as an aggravated felony "a crime of violence (as defined in section 16 of title 18, United States Code, but not including a purely political offense) for which the term of imprisonment [is] at least one year." Thus, when Congress intended to remove certain behavior from the INA's ambit, it did so by incorporating a *restrictive*, rather than *descriptive*, parenthetical.

Section 1101(a)(43)(A) is devoid of any descriptive or restrictive parentheticals and simply lists the crimes of "murder, rape, or sexual abuse of a minor" without further definition. When contrasted with the structure of the statute as a whole, such an omission is instructive, for it is typically understood that the legislature proceeds purposefully when it inserts specific language in one statutory section but omits it in another. See Sandoval v. Reno, 166 F.3d 225, 241 (3d Cir. 1999). In other § 1101(a)(43) sections, Congress specified certain aggravated felonies by cross-referencing criminal statutory provisions. The fact that it did not do so with "sexual abuse of a minor" indicates that it intended that the phrase be given its common law definition.[3] See Drakes, 240 F.3d at 249 (explaining that

---

[3] As is discussed below, in Rodriguez-Rodriguez, the BIA took note of the common definition of "sexual abuse of a minor" before invoking the federal definition found in § 3509.

11

"[w]here federal criminal statutes use words of established meaning without further elaboration, courts typically give those terms their common law definition"). Alternatively, Congress may have intended for the BIA to utilize its expertise to define the phrase, see Chevron, 467 U.S. at 843-44 ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."), or it may have inserted the generic phrase because the definition of sexual abuse of a minor varies by state and federal law, see United States v. Zavala-Sustaita, 214 F.3d 601, 605-06 (5th Cir. 2000) (explaining that because sexual abuse of a minor lacks legal specificity, it is less likely that Congress intended a narrow reading of the phrase). In any case, the pertinent point is that the precise definition of the phrase is most assuredly not clear and unambiguous.

According to Restrepo, the legislative history underlying the INA evidences an intent to define sexual abuse of a minor by reference to the federal criminal definition contained in § 2243. The thrust of Restrepo's argument centers upon timing; he deems it significant that Congress amended the definition section of § 2243 in the same legislation that amended § 1101(a)(43)(A) to include sexual abuse of a minor as an

12

aggravated felony.[4]  Restrepo asserts that "identical words used in different parts of the same act are intended to have the same meaning." Dep't of Revenue v. ACF Indus., 510 U.S. 332, 342 (1994) (quoting Sorenson v. Sec'y of Treasury, 475 U.S. 851, 860 (1986).  This maxim is inapplicable to the legislative enactment at issue, which was omnibus legislation.  Restrepo's argument seeks to conjoin the meaning of words used in separate and distinct statutes.  Omnibus legislation often involves the combination of disparate matters into a single bill, the unitary packaging of which may be designed to present the executive with an all-or-nothing signing decision. See Black's Law Dictionary 186 (9th ed. 2009) (defining "omnibus bill" as a "single bill containing various distinct matters, usually drafted in this way to force the executive either to accept all the unrelated minor provisions or to veto the major provision").  In

---

[4] Congress amended the definition of "sexual abuse of a minor" contained in 18 U.S.C. § 2243 when it passed the Amber Hagerman Child Protection Act of 1996 (hereinafter, the "Amber Hagerman Act").  See Amber Hagerman Child Protection Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-31 (codified at 18 U.S.C. § 2241).  The Amber Hagerman Act was enacted as part of the Omnibus Consolidated Appropriations Act of 1997, Pub. L. 104-208, 110 Stat. 3009-1.  In a separate portion of the omnibus bill, Congress amended § 1101(a)(43)(A), inserting "sexual abuse of a minor" alongside "murder" and "rape."  See H.R. Rep. No. 104-828, at 83 (1996) (Conf. Rep.).  Amendment of § 1101(a)(43)(A) was part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").

13

most instances, there is a broad spectrum of congressional intent in play across the distinct statutes that comprise the larger enactment.[5]  Hence, Restrepo's statutory construction argument is unavailing.

Restrepo also asserts that the definition of aggravated felony set forth in § 1101(a)(43)(A) subsumes an element of violence.  He invokes the rule of *noscitur a sociis*, which construes an ambiguous word in the context of the words surrounding it. Black's Law Dictionary 1160-61 (9th ed. 2009). Restrepo contends that violence is an integral element of murder and rape and, therefore, it must also be an integral element of sexual abuse of a minor.  Considering the broader context of the legislation at issue, this contention is unpersuasive. See Lee, 368 F.3d at 222 (counseling courts to examine the statutory language, as well as "the broader context of the statute as a whole"); see also Kelly v. Robinson, 479 U.S. 36, 43 (1986) ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of

---

[5] A quick perusal of the omnibus legislation in question illustrates this point.  The primary purpose of the bill is to appropriate monies for the fiscal year ending September 30, 1997.  See Omnibus Consolidated Appropriations Act, 1997, Pub. L. 104-208, 110 Stat. 3009-1.  However, the bill also amends, *inter alia*, the Age Discrimination in Employment Act and the Privacy Protection Act, and enacts, *inter alia*, the Child Pornography Prevention Act of 1996 and the Amber Hagerman Act.  It is simply unreasonable to assume that Congress legislated with uniform intent across such disparate statutes.

14

the whole law, and to its object and policy."). When Congress amended § 1101(a)(43)(A) to include sexual abuse of a minor, it simultaneously amended the INA to classify crimes of domestic violence, stalking, child abuse, child neglect, and child abandonment as grounds for deportability. See Pub. L. No. 104-208, 110 Stat. 3009-639-40 (codified at 8 U.S.C. § 1227(a)(2)(E)). The House conference report specifically connected these two amendments, explaining that

> an alien convicted of crimes of domestic violence, stalking, or child abuse is deportable. The crimes of rape and sexual abuse of a minor are elsewhere classified as aggravated felonies under INA section 101(a)(43), thus making aliens convicted of those crimes deportable and ineligible for most forms of immigration benefits or relief from deportation.

H.R. Rep. No. 104-828, at 83 (1996) (Conf. Rep.). As this passage illustrates, Congress intended to expand both the protections afforded to minors and the penalties applicable to

15

aliens who commit crimes against minors.[6]  Accordingly, it would be counterintuitive to require an element of violence and limit the definition of sexual abuse of a minor to those offenses appearing in § 2243.  This construction would exempt from § 1101(a)(43)(A) numerous offenses which are considered

---

[6] Our recourse to legislative history is appropriate in this matter.  When "statutory language does not express Congress's intent unequivocally, a court traditionally refers to the legislative history and the atmosphere in which the statute was enacted in an attempt to determine the congressional purpose."  White v. Lord Abbett & Co. LLC, 553 F.3d 248, 254 (3d Cir. 2009) (quoting United States v. Gregg, 226 F.3d 253, 257 (3d Cir. 2000)).  We are, of course, aware that exclusive reliance upon legislative history is not preferred, and we have surveyed the relevant legislative history with caution.  See Morgan v. Gay, 466 F.3d 276, 278 (3d Cir. 2006) (stating that reliance "on legislative history to discern legislative intent should be done with caution, if at all").  In the present matter, the House conference report is useful because it suggests that Congress intended to implement comprehensive protections for minor victims that were expansive in nature.  This reading comports with the structure of § 1101(a)(43)(A), which purposefully leaves murder, rape, and sexual abuse of a minor undefined.  In addition, it is consistent with the BIA's interpretation of sexual abuse of a minor, a factor which is relevant in the third step of the Chevron inquiry.  See infra pp. 15-17.

16

sexual abuse of a minor under state law;[7] such a reading does not comport with the legislative history examined above and the

_____

[7] For example, under New Jersey law, aggravated criminal sexual contact consists of an act of sexual contact—defined as "an intentional touching by the victim or actor, either directly or through the clothing, of the victim's or actor's intimate parts"—upon a victim that is at least thirteen but less than sixteen years of age. See N.J. Stat. Ann. §§ 2C:14-1, 2C:14-2. In Pennsylvania, an actor may be guilty of indecent assault, which is defined as a "sexual offense," if he or she touches any of the "sexual or other intimate parts" of a person under the age of thirteen or, alternatively, under the age of sixteen when the offender is four or more years older than the victim. See 18 Pa. Cons. Stat. § 3126. Under Delaware law, an individual is guilty of unlawful sexual contact in the second degree when he or she intentionally touches another person under the age of eighteen on the anus, breast, buttocks or genitalia and the touching occurs through the clothing. See Del. Code Ann. 11, §§ 761, 768. Each of these criminal provisions proscribes touching through the clothing. However, § 2243 specifically exempts touching through the clothing from the range of defined criminal conduct. Thus, were we to accept Restrepo's interpretation of § 1101(a)(43)(A), none of the above-described acts—all of which are defined as criminal sex acts against minors—would qualify as an aggravated felony under the INA.

17

broader context in which the statute was enacted.[8]

We have carefully examined the text of § 1101(a)(43)(A), the precise context in which its language is used, and the larger framework underlying the statute's purpose. Our inquiry leaves us in a state of interpretive uncertainty, and we are unable to

---

[8] Congress amended § 1101(a)(43)(A) as part of the IIRIRA. See supra note 4. It is undeniable that the overarching purpose of this statute is to augment the procedures for removal of aliens who are convicted of felony offenses. For example, the enactment mandates detention pending deportation, 8 U.S.C. § 1231; withdraws judicial discretion to impose probation or to suspend a sentence when the offense of conviction requires deportation, see § 1101(a)(48); facilitates removal on an expedited basis, § 1228; eliminates a § 212(c) waiver of deportability previously available to aggravated felons, § 1228; significantly restricts an aggravated felon's opportunity for appeal by stripping courts of jurisdiction to review orders of removal, § 1252; forbids reentry when an alien is convicted of an aggravated felony, § 1182; and gives retroactive effect to the aggravated felony provision, see § 1101(a)(43); see also see William J. Johnson, Note, When Misdemeanors are Felonies: The Aggravated Felony of Sexual Abuse of a Minor, 52 N.Y.L. Sch. L. Rev. 419, 428-33 (2007) (detailing various IIRIRA provisions increasing the scope of deportability). The comprehensive severity of this statutory enactment strongly suggests that the narrow definition of "sexual abuse of a minor" proposed by Restrepo is inconsistent with congressional intent.

18

discern the clear and unmistakable intent of Congress with respect to the definition of "sexual abuse of a minor." Thus, we must look to the BIA's interpretation of the phrase and determine whether that interpretation is reasonable. In Matter of Rodriguez-Rodriguez, an *en banc* panel of the BIA thoroughly examined the statutory language, legislative intent, and legislative purpose behind the INA's enactment. See 22 I. & N. Dec. 991. The panel determined that although "sexual abuse of a minor" was undefined in the immigration statute, the legislature's unmistakable intent "was to expand the definition of aggravated felony and to provide a comprehensive statutory scheme to cover crimes against children." Id. at 994. Thus, Rodriguez-Rodriguez concluded that "sexual abuse of a minor" was most appropriately defined by § 3509(a)(8), a code section relating to the rights of child victims and witnesses in federal criminal cases. Id. at 995-96. Section 3509(a)(8) defines sexual abuse to include "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." § 3509(a)(8).

The panel explained that the broad nature of § 3509's definition was consistent with congressional intent to enact immigration legislation which comprehensively addressed the range of misconduct perpetrated against children while accommodating the divergent ways in which states categorize and define child sex crimes. As part of its rationale, the Board also looked to the common law definition of "sexual abuse," defined by Black's Law Dictionary as "illegal sex acts performed against a minor by a parent, guardian, relative, or

19

acquaintance." Black's Law Dictionary 1375 (6th ed. 1990). According to Rodriguez-Rodriguez, "the common usage of the term includes a broad range of maltreatment of a sexual nature,"[9] a reading compatible with § 3509.[10] 22 I. & N. Dec. at 995-96. Significantly, the BIA recognized that it was "not obliged to adopt a federal or state statutory provision" to define "sexual abuse of a minor." Id. at 994. As the Second Circuit has explained:

> It would be troubling if the BIA had done no more than pluck the definition of "sexual abuse of a minor" from § 3509(a). That statute sets forth procedures for protecting child victims and child witnesses in the course of federal litigation . . . . We agree that the § 3509(a) definition is appropriate not simply because it appears somewhere in the United States Code, but because it is consonant with the generally understood broad meaning of the term "sexual abuse" as reflected in Black's: "An illegal sex act,

---

[9] The panel's recourse to Black's Law Dictionary comports with the accepted method of affording terms their common definition when they are left undefined by Congress. See Drakes, 240 F.3d at 249.

[10] The Rodriguez-Rodriguez panel was careful to note that it was not adopting § 3509(a)(8) as a restrictive or limiting definition, "but invok[ing] it as a guide in identifying the types of crimes we would consider to be sexual abuse of a minor." Rodriguez-Rodriguez, 22 I. & N. at 996.

20

> esp. one performed against a minor." See Black's
> Law Dictionary, 10 (7th ed. 1999).

Mugalli v. Ashcroft, 258 F.3d 52, 58-59 (2d Cir. 2001) (footnote omitted). We agree with the Second Circuit that the reasonableness of the BIA's resort to § 3509(a) to define "sexual abuse of a minor" is rooted in the consonance between that statutory provision and the commonly accepted definition of "sexual abuse."

We conclude that the BIA's definition of sexual abuse of a minor is a reasonable one and that it is appropriate to exercise Chevron deference. Accordingly, we will define sexual abuse of a minor by reference to § 3509(a). Not only is our conclusion consistent with principles of statutory construction, it also represents a logical extension of our precedent. Indeed, this is not the first time we have been presented with a question concerning the meaning of sexual abuse of a minor. In Singh v. Ashcroft, 383 F.3d 144 (3d Cir. 2004), we were asked to decide whether a conviction for "unlawful sexual contact in the third degree" under Delaware law constitutes "sexual abuse of a minor" under § 1101(a)(43)(A). The petitioner in that matter, Khaimraj Singh, was convicted for touching the breast of his cousin, who was under the age of sixteen. Id. at 148. When he later appeared before an immigration judge, he was deemed removable as an aggravated felon. Id. at 149-50. The immigration judge reached this disposition by invoking § 3509's definition of "sexual abuse," but he did not apply the categorical approach mandated by Taylor. See id. at 150, 152. We criticized this interpretive analysis and elected not to apply Chevron deference where "the IJ offered no reason for his decision not to apply Taylor's categorical approach," and the

21

BIA affirmed without opinion. Id. at 152. We nonetheless explained that we had "no quarrel" with the immigration judge's invocation of § 3509 and we reserved decision on whether that code section appropriately defined sexual abuse of a minor. Id. at 153.

Two years later, we assumed, without deciding, that the BIA's interpretation of sexual abuse of a minor was appropriate. See Stubbs, 452 F.3d at 255-56. Furthermore, two of our sister circuits have explicitly adopted the definition supplied in Rodriguez-Rodriguez via Chevron deference, while several others have assumed that § 3509 represents an appropriate definition of "sexual abuse of a minor." See Gaiskov v. Holder, 567 F.3d 832, 835 (7th Cir. 2009); James v. Mukasey, 522 F.3d 250, 254 (2d Cir. 2008); Mugali v. Ashcroft, 258 F.3d 52, 55-56 (2d Cir. 2001); see also Vargas v. Dep't of Homeland Sec., 451 F.3d 1105, 1107-08 (10th Cir. 2006) (assuming applicability of § 3509 definition); Bahar v. Ashcroft, 264 F.3d 1309, 1311-12 (11th Cir. 2001) (holding that the Rodriguez-Rodriguez interpretation is not unreasonable); Zavala-Sustaita, 214 F.3d 601, 606-08 (5th Cir. 2000) (explaining that § 3509 definition is consistent with § 1101(a)(43)(A)'s definition of sexual abuse of a minor). In contrast, the Ninth Circuit is the only federal appellate court to reject the Rodriguez-Rodriguez interpretation. In Estrada-Espinoza v. Mukasey, 546 F.3d 1147 (9th Cir. 2008) (en banc), the Ninth Circuit held that Chevron deference was inappropriate, and it defined sexual abuse of a minor by reference to § 2243. We do not find the *ratio decidendi* of Estrada-Espinoza to be persuasive for several reasons. First, it would be difficult to conjure up two more divergent fact patterns. Estrada-Espinoza, age twenty, was ensconced in a

22

consensual relationship with his fifteen- or sixteen-year-old girlfriend.  546 F.3d at 1150.  Both sets of parents approved of the relationship, and, ultimately, the couple raised a child together.  Id. at 1150, 1160.  Driven by these compelling facts, and armed with a heuristic survey of statutory rape law, the Ninth Circuit found no "abuse" element in Estrada-Espinoza's conviction.[11]  Id. at 1152-56.  In stark contrast, Restrepo's sexual touching of his daughter, commencing when she was only twelve years old,[12] is patently non-consensual and abusive.

Second, the Estrada-Espinoza court's statutory

---

[11] The Estrada-Espinoza court surveyed the common contemporary meaning of sexual abuse of a minor, with particular emphasis on the word "abuse."  Id. at 1152-55.  It concluded that, under contemporary standards, not all sexual activity with older adolescents—such as sixteen- and seventeen-year-olds—is abusive.  Id. at 1153.  Although its rather myopic analysis of statutory rape law is *dicta*, the court clearly utilized this analysis to justify its determination that § 2243 is consistent with the "generic sense in which [sexual abuse of a minor] is now used in the criminal codes of most states."  See Taylor, 495 U.S. at 598.

[12] Restrepo was charged with acts of sexual contact that occurred "from 1992 to approximately December of 1993[,]" but Restrepo admitted to police that he began fondling his daughter in 1990, approximately four years prior to his March 1994 arrest.  Thus, according to Restrepo's own admission, his daughter—who was born on July 15, 1977—was twelve years old when the offense began.

23

construction analysis is fatally flawed. Concluding that the generic elements of sexual abuse of a minor are defined in 18 U.S.C. § 2243, the court rationalizes Congress's failure to cross-reference § 2243 in § 1101(a)(43)(A) as follows:

> [T]here is a clear distinguishing characteristic between the aggravated felonies that are linked to other statutory provisions and those that are not. Those that refer to a broad category of offenses, using a potentially ambiguous phrase, reference other statutory provisions for clarification. On the other hand, those that refer to a specific crime which is already clearly defined in criminal law have no need for a cross-reference.

546 F.3d at 1155. We disagree with this analysis. We believe it is far more likely that Congress eschewed cross references for crimes identified only by common parlance, such as murder, rape, sexual abuse of a minor, and theft because these terms are *not* clearly defined and *cannot* be clearly defined by a simple cross-reference. To the contrary, Congress purposefully did not employ cross-references for these generic crimes to ensure the incorporation of a broad range of diverse state statutory definitions.

"Theft" is a prime example of a broad term that potentially falls within the ambit of many state statutory definitions. Indeed, the language of the INA implicitly acknowledges that there are a variety of "theft" and "burglary" offenses. See 8 U.S.C. § 1101(a)(43)(G) (listing "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year" as an

24

aggravated felony).  Theft offenses range from "steal[ing] property"[13] to "knowingly possess[ing] stolen property"[14] to

---

[13] N.Y. Penal Law § 155.25; see also United States v. Graham, 169 F.3d 787 (3d Cir. 1999) (holding that an alien who was convicted of petit larceny under N.Y. Penal Law § 155.25 and received a sentence of one year was removable under the INA).  Some statutes include specifications as to the value of the property stolen.  See, e.g., Cal. Penal Code § 487(a) (prohibiting the taking of "money, labor, or real or personal property . . . of a value exceeding four hundred dollars"); see also Ramirez-Villalpando v. Holder, 601 F.3d 891 (9th Cir. 2010) (holding that a conviction under Cal. Penal Code 487(a) is a conviction for an aggravated felony under the INA).  Another variation appearing in many statutes is an element of intent.  See, e.g., Conn. Gen. Stat. § 53a-119 ("A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."); see also Almeida v. Holder, 588 F.3d 778, 789 (2d Cir. 2009) (holding that a conviction under either theory of intent articulated in Conn. Gen. Stat. §53a-119 is a conviction for an aggravated felony).  In addition, there may be a multitude of nuances to a single statutory definition.  For example, Conn. Gen. Stat. § 53a-119 contains a basic definition of larceny, followed by a list of eighteen offenses included in that definition.

[14] See N.Y. Penal Law § 165.50 ("A person is guilty of criminal possession of stolen property in the third degree when he knowingly possesses stolen property, with intent to benefit

25

"us[ing] the services or property of another person entrusted to [the defendant] or placed in his or her possession . . . for a limited use."[15]  The phrase "sexual abuse of a minor" similarly

himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when the value of the property exceeds three thousand dollars."); see also  Burke v. Mukasey, 509 F.3d 695 (5th Cir. 2007) (holding that a conviction under N.Y. Penal Law § 165.50 is an aggravated felony conviction).

[15] Nev. Rev. Stat. Ann. § 205.0832(1)(b); see also Nolos v. Holder, 2010 U.S. App. LEXIS 14060 (5th Cir. 2010) (holding that Nev. Rev. Stat. Ann. § 205.0832(1)(b) meets the court's "generic definition of theft" and therefore qualifies as an aggravated felony).

Of course, some criminal conduct that might be characterized as "theft" does not qualify as an aggravated felony under § 1101(a)(43)(G). See, e.g., Cal. Veh. Code § 10851(a) ("Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle . . . or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense[.]"), Or. Rev. Stat. § 165.800 ("A person commits the crime of identity theft if the person, with the intent to deceive or defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person."); see also Penuliar v. Mukasey, 528 F.3d 603, 611-14

26

covers a broad assortment of statutes[16] and criminal activities.

Finally, were we to limit the definition of sexual abuse of a minor to the conduct proscribed in § 2243, a host of misconduct criminalized by state law would not qualify as an aggravated felony under the INA. For instance, any state statute that criminalizes inappropriate touching of a minor through the clothing is beyond the scope of § 2243, which requires a "sexual act" as defined in 18 U.S.C. § 2246, and which does not include touching through the clothing. Felony convictions under a variety of state criminal code provisions would not qualify as aggravated felonies if we relied on § 2243 for the definition of sexual abuse of a minor.[17] Such a result would run counter to

---

(9th Cir. 2008) (holding that a conviction under Cal. Veh. Code § 10851(a) does *not* categorically qualify as an aggravated felony conviction), Mandujano-Real v. Mukasey, 526 F.3d 585 (9th Cir. 2008) (holding that a conviction under Or. Rev. Stat. § 165.800 is *not* a conviction for an aggravated felony theft offense).

[16] See, e.g., Alaska Stat. §§ 11.41.434, 11.41.436, 11.41.438, 11.41.440, D.C. Code §§ 22-3009.01, 22-3009.02, Me. Rev. Stat. Ann. tit. 17-A, § 254, Md. Code Ann., Crim. Law § 3-602, Utah Code Ann. § 76-5-401.1, Wyo. Stat. Ann. §§ 6-2-314, 6-2-315, 6-2-316, 6-2-317. Even the Estrada-Espinoza court acknowledged that "sexual abuse of a minor" is "a common title for offenses under state criminal codes." 546 F.3d at 1156.

[17] See supra notes 6 and 7 and accompanying text.

27

Congress' clear intent to expand the scope of activities constituting an aggravated felony. The Estrada-Espinoza court's definition of sexual abuse of a minor does not give effect to this legislative purpose.

We note with interest that the Ninth Circuit recently retreated from its position in Estrada-Espinoza. Notwithstanding its certainty in Estrada-Espinoza that Congress "intended the 'aggravated felony' of 'sexual abuse of a minor' to incorporate the definition of 'sexual abuse of a minor' in 18 U.S.C. § 2243," 546 F.3d at 1152 n.2, the Ninth Circuit subsequently explained that Estrada-Espinoza's "holding was intended to define statutory rape laws only." United States v. Medina-Villa, 567 F.3d 507, 515 (9th Cir. 2009).

For all of these reasons, we reject the analysis set forth in Estrada-Espinoza.

## 2. *Applying the Categorical Approach*

To complete the Taylor analysis, we must compare the definition of aggravated criminal sexual contact under N.J. Stat. Ann. § 2C:14-3(a) with our definition of sexual abuse of a minor. Section 2C:14-3(a) provides that "[a]n actor is guilty of aggravated criminal sexual contact if he commits an act of sexual contact with the victim under any of the circumstances set forth in 2C:14-2(a)(2) through (7)." N.J. Stat. Ann. § 2C:14-3(a). In Restrepo's case, the sexual contact for which he was convicted was the intentional touching of his daughter's breasts

28

and vagina through her clothing.[18]  The circumstances set forth in § 2C:14-2(a)(2) through (7) are phrased in disjunctive form, and, therefore, we must identify the specific subsection under which Restrepo was convicted.[19]  Singh, 383 F.3d at 162; see also Valansi, 278 F.3d at 214.  Restrepo's charging instrument alleges that he "did commit act(s) of aggravated criminal sexual contact upon L.R., a child of at least (13) but less than (16) years, with said defendant being related to L.R. by blood or affinity to the third degree[.]"  Hence, the circumstances listed in N.J. Stat. Ann. § 2C:14-2(a)(2), ("The victim is at least 13 but less than 16 years old"), and (a)(2)(a), ("The actor is related to the victim by blood or affinity to the third degree"), are the relevant circumstances with respect to the "act of sexual contact" that led to Restrepo's conviction.  Under Taylor, we must now determine whether conduct that constitutes "sexual abuse of a minor" is necessary for a conviction under these

---

[18] N.J. Stat. Ann. § 2C:14-1(d) defines "sexual contact" as "an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor.  Sexual contact of the actor with himself must be in view of the victim whom the actor knows to be present[.]"

[19] The statutory definition of the offense is phrased in disjunctive form, and it is therefore appropriate to apply the modified categorical approach.  Hence, we examine the charging instrument, to determine which subsections apply to Restrepo's conviction.  See Singh, 383 F.3d at 162.

29

provisions of New Jersey law.

Section 3509(a)(8)[20] provides that "the term 'sexual abuse' includes the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in . . . sexually explicit conduct[.]"  Additionally, § 3509(a)(9) defines "sexually explicit conduct" to include "sexual contact[,]" which refers to "the intentional touching, either directly or through clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire of any person[.]"  Considering the breadth of conduct encompassed by these provisions, it is plain that an individual convicted of "aggravated criminal sexual contact" under N.J. Stat. Ann. § 2C:14-3(a) has necessarily engaged in an act within the definition of "sexual abuse of a minor" provided by § 3509.  Therefore, Restrepo's conviction falls within the ambit of "sexual abuse of a minor," which constitutes an aggravated felony under § 1101(a)(43).

As previously noted, supra Part II, we are without jurisdiction to review an order to remove an alien who committed an aggravated felony.  See 8 U.S.C. § 1252(a)(2)(C). In light of our conclusion that Restrepo's conviction qualifies as a conviction for an aggravated felony, we lack jurisdiction to

---

[20] As previously discussed, we have concluded that it is appropriate to defer to the BIA's definition of sexual abuse of a minor, elucidated in Rodriguez-Rodriguez.  Thus, like the BIA, we will rely on 18 U.S.C. § 3509 "as a guide in identifying the types of crimes we would consider to be sexual abuse of a minor."  22 I. & N. Dec. at 996.

30

review the BIA's order, and we will not disturb it.

B. *Are the Removal Proceedings Time-Barred?*

Restrepo invokes 28 U.S.C. § 2462, a federal "catch-all" statute of limitations, to argue that the removal proceeding initiated against him in 2004 was untimely. Section 2462 provides that proceedings for the enforcement of "any civil fine, penalty, or forfeiture" must be commenced no later than five years from the date when the claim accrued, except as otherwise provided by law. Restrepo contends that deportation is a forfeiture and/or a penalty, and he asserts that the removal action against him—which was initiated approximately ten years after his conviction—is time-barred.

The BIA rejected Restrepo's argument, concluding that removal is not a civil penalty or forfeiture. It also noted that under 8 U.S.C. § 1229(d), Restrepo had "no legally enforceable right to have removal proceedings commenced within any specific time frame after the date of the conviction rendering [him] removable."[21] For these reasons, the BIA declined to apply § 2462's "catch-all" statute of limitations to the removal proceedings against Restrepo. Despite our discomfiture with the prolonged delay in initiation of removal proceedings, we are

---

[21] Section 1229(d) provides for expeditious commencement of removal proceedings, but it also states that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." § 1229(d)(2).

31

compelled to concur in the conclusions of the BIA.

At the outset, we note that the record is devoid of any reasonable explanation for USICE's failure to initiate proceedings against Restrepo until ten years after his conviction, and eight years after the definition of "aggravated felony" was amended to include sexual abuse of a minor. We find this enforcement history troubling, and it begs the question which we posed to the Attorney General at oral argument, in essence: is it not appropriate to impose some statute of limitations governing the period within which the USICE may prosecute the removal of aliens convicted of aggravated felonies? Our inquiry is rhetorical, however, in that the statute imposes *no* time constraints on such proceedings, and the task of creating a limitations period lies with the legislature, not the judiciary. See, e.g., Lonchar v. Thomas, 517 U.S. 314, 328 (1996) (commenting on the "institutional inappropriateness" of making policy "through an ad hoc judicial exception, rather than through congressional legislation or through the formal rulemaking process"); see also Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 303 (1946) (noting that "it is for Congress rather than for the courts to create and limit" exceptions to statutory limitations periods). Section 1229 directs the government to "begin any removal proceedings as expeditiously as possible after the date of conviction[,]" § 1229(d)(1), but it imposes no time limitation upon government action, and it specifically disclaims the creation of any enforceable rights.

Restrepo's § 2462 argument relies upon a quotation from the 1948 Supreme Court case of Fong Haw Tan v. Phelan, 333 U.S. 6, 10 (1948): "[Removal] is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty."

32

Restrepo's reliance on this statement is misplaced, because it does not address the question of whether removal proceedings qualify as a forfeiture or a penalty *for purposes of § 2462*,[22] and because it is squarely refuted by a host of cases from the Supreme Court and this Court, holding that removal is *not* a penalty.[23]  Thus, we conclude that § 2462's five-year statute of limitations does not apply to removal proceedings.

---

[22] In Fong Haw Tan, the Court was merely noting that deportation is a "drastic measure" with "considerable" consequences for the alien.  Id.  Fong Haw Tan addressed the circumstances under which an alien was considered to be "sentenced more than once[,]" and thereby removable, under a law which has since been repealed.  Id. at 7-8.  The Court remarked on the harsh consequences of deportation in order to justify a narrow construction of the language at issue.  Id. at 10.  Consequently, the quoted language does not control the question of whether Restrepo's removal proceedings are untimely under § 2462.

[23] For instance, in INS v. Lopez-Mendoza, 468 U.S. 1032 (1984), Justice O'Connor wrote that "[a] deportation proceeding is . . . not [intended] to punish an unlawful entry[.]" Id. at 1038.  Decades earlier, Chief Justice Taft similarly stated that "[i]t is well settled that deportation, while it may be burdensome and severe for the alien, is not a punishment." Mahler v. Eby, 264 U.S. 32, 39 (1924).  Judges of this Court have also explained that "deportation statutes are not penal in nature." Bufalino v. INS, 473 F.2d 728, 739 (3d Cir. 1973) (Adams, C.J., concurring).

33

## IV.

For the reasons explained above, we will deny the petition for review.