NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1737
_____


JIAN BIN SHI,
                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                    Respondent


_____


On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable Steven A. Morley
(B.I.A. No. A200-745-168)
_____


Submitted Under Third Circuit LAR 34.1(a)
November 17, 2016

Before: AMBRO, SHWARTZ, and FUENTES, Circuit Judges

(Filed: December 9, 2016)
_____

OPINION[*]
_____


AMBRO, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Jian Bin Shi petitions for review of the Board of Immigration Appeals's decision affirming the Immigration Judge's order of removal.  For the following reasons, we grant the petition in part, deny it in part, and remand to the BIA.

## I. Facts and Procedural History

Shi is from China and is a member of an unregistered Catholic church.  Shi alleges that in 2009, when he and other church members were renovating a church, the police arrested them.  They took Shi into custody and interrogated him.  When he did not comply with the interrogator's requests to provide information about his church, he was beaten for "several minutes."  App. 153.  The beating stopped when Shi almost lost consciousness.  He remained in police custody for four days.  The police released him after his parents paid a 5,000 RMB bond.  On release, the police asked Shi to sign an acknowledgment that he would not participate in his church, and the police told him that he needed to report to them once a month.  They also warned Shi that he could face "serious consequence[s]" for continuing to participate in the church.  App. 109.

After release, Shi did not seek medical treatment for the beating, but his mother applied some herbal oil on his wounds.  Shortly thereafter, Shi fled China and was smuggled into the United States.  He then filed an application for asylum and withholding of removal under the Immigration and Nationality Act.  The IJ denied relief, finding that, although Shi credibly testified, he (1) failed to corroborate his claim and (2) even if he had corroborated his story, failed to show a credible fear of persecution.  The BIA affirmed.

## II. Jurisdiction and Standard of Review

2

We have jurisdiction under 8 U.S.C. § 1252(a)(1); the BIA had jurisdiction under 8 C.F.R. § 1003.1(e)(4)–(6). Where, as here, the BIA explicitly adopts the IJ's opinion and adds its own analysis, we review the decisions of both the IJ and BIA. *Restrepo v. Att'y Gen.*, 617 F.3d 787, 790-91 (3d Cir. 2010).

We will not disturb the findings of fact that underpin the BIA's decision if "they are supported by substantial evidence from the record considered as a whole, and we will reverse based on a factual error only if any reasonable fact-finder would be compelled to conclude otherwise." *Id.* (citations and internal quotation marks omitted). We review the BIA's legal conclusions *de novo*, but we defer to its reasonable interpretations of immigration laws. *Id.*

## III. Discussion

Shi does not identify any legal error with the IJ's analysis nor identify any evidence that the IJ overlooked. Rather, he takes issue with the IJ's factual determinations that he failed to (1) corroborate his claim sufficiently and (2) establish a credible fear of persecution.

*A. Failure to Corroborate*

In both asylum and withholding of removal proceedings, "[t]he testimony of the applicant, if credible, *may* be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a), 16(b) (emphasis added). When credible testimony is *not* sufficient, the IJ may require corroboration. If so, the IJ must provide "(1) an identification of the facts for which it is reasonable to expect corroboration; (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts;

3

and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so." *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001) (citation and internal quotation marks omitted). Shi does not argue that the IJ failed to follow the three-part *Abdulai* framework. Instead, he disagrees with the IJ's ruling that he failed to corroborate his claims.

As corroboration, Shi provided two letters, one from his father and one from a friend, stating that Shi had been arrested. An additional letter from a Bishop in China, however, did not mention the arrest. The IJ found this omission "curious," notwithstanding Shi's explanation that the Bishop neglected to mention the arrest, because the letter's purpose was to confirm that Shi was a Catholic. App. 68. To the IJ, this was not adequate. Instead, he concluded that, because the record demonstrated that the Chinese government has an official practice of detaining unregistered Christians, Shi should have obtained some official documentation corroborating his arrest or, at the very least, some evidence that his parents actually posted a 5,000 RMB bail to release him from police custody.

Shi did not explain to the IJ why he did not try to obtain that documentation even though he communicated with his parents throughout these proceedings. He merely argues that the IJ was unreasonable in requesting documentation of his arrest because he doubts that the Chinese government would be willing to give him that documentation. Although it may have been difficult for Shi to obtain the documentation, the record does not compel a conclusion that the evidence was actually unavailable. 8 U.S.C. § 1252(b)(4) ("No court shall reverse a determination made by a trier of fact with respect

4

to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.").

In his petition for review, Shi fails to address the second item of corroboration required by the IJ: that he should have corroborated his mother's church leadership role and the government's "restraint" of her activities. The IJ concluded that it would be reasonable to expect Shi to corroborate this given that it would verify the government's harassment of Shi's church and his family. It would also lend credence to Shi's contention that he would be personally singled out for persecution. The only corroborating evidence was the Bishop's letter, which stated that the government "restrained" Shi's mother from holding church events in her home and that his mother was the "main director" of the church. App. 164. This letter predated Shi's asylum application. That application, however, did not mention his mother's leadership role or history of restraint, and neither did his father's or friend's letter.

The IJ found that the Bishop's letter did not carry Shi's corroboration burden. *See Sandie v. Att'y Gen.*, 562 F.3d 246, 254 (3d Cir. 2009) (holding that the IJ could require further corroborating evidence even when the record "include[d] statements from multiple witnesses and two experts"). Shi had the opportunity to ask his father to amend his letter or to ask his mother to submit a statement, but he did not. Shi also admitted that he "didn't know why [his father] didn't mention . . . that [restraint]." App. 133.

While under a *de novo* standard of review we might have disagreed with the IJ's finding that Shi failed to corroborate his claim, we do not disturb findings of fact unless

the record compels a contrary conclusion. Because the record does not do so here, we conclude that the IJ's corroboration determination is supported by substantial evidence. *See Sandie*, 562 F.3d at 254. Accordingly, we deny Shi's petition with respect to the corroboration determination.

## B. Persecution

The BIA and IJ next concluded that even if Shi had corroborated his claim, he nonetheless did not demonstrate past persecution or a well-founded fear of future persecution to qualify for asylum. We find nothing in the record to compel a contrary conclusion with respect to the grounds for relief the IJ and BIA considered. We remand, however, as to a ground for relief they did not consider.

A person may receive asylum if he has suffered past persecution or has a reasonable fear of future persecution. 8 C.F.R. § 208.13(b). If an applicant establishes by substantial evidence that he has experienced past persecution, this triggers a rebuttable presumption of a well-founded fear of future persecution. *Singh v. Gonzales*, 406 F.3d 191, 195–96 (3d Cir. 2005). For mandatory withholding of removal under the INA, an applicant must show that it is more likely than not (a higher standard than asylum requires) that he will be persecuted on removal. *Jarbough v. Att'y Gen.*, 483 F.3d 184, 190-91 (3d Cir. 2007).

"Persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Lukwago v. Ashcroft*, 329 F.3d 157, 167-68 (3d Cir. 2003) (internal quotation marks and citations omitted). Rather, it "is an

6

extreme concept that does not include every sort of treatment our society regards as offensive." *Jarbough*, 483 F.3d at 191 (citation omitted).

Even if Shi had corroborated his May 2009 arrest, the IJ found that the arrest, four-day detention, and interrogation—in which Shi was beaten for several minutes but failed to seek medical treatment—did not amount to past persecution. Although we recognize that the police's treatment of Shi was appalling, he has not shown that a reasonable factfinder would be compelled to conclude that this treatment amounted to persecution. *See id.* (holding that substantial evidence supported finding of no past persecution when officers detained petitioner for two days, threatened and beat him during interrogation, yet he did not require immediate medical intervention).

The IJ also found that Shi failed to show a well-founded fear of future persecution. The IJ concluded that, due to the lapse in time since the 2009 arrest, the police were probably no longer looking for Shi. The IJ also found that Shi would not be persecuted within the meaning of the INA if he continued his religious practice. Shi testified that his friend (who was also arrested) continues to participate in the church and that the worst treatment the friend receives is that on occasion the police yell at him or "smack [him] on the head." App. 150. Further, the IJ concluded that, based on various reports, religious restrictions on unregistered Christians vary by region and Shi had not demonstrated that he was from a region where China strictly enforced these restrictions. The reports also noted that the Chinese government's reprisals are directed at church leaders, not laypersons like Shi. Although he disagrees with the IJ's interpretation of this record,

7

substantial evidence supports the IJ's determination that Shi failed to establish a credible fear of future persecution.

Shi also argues that having to practice his religion underground to avoid being punished by the government is itself a form of persecution. He presented this argument to the BIA, but it did not address the contention.

In *Fatin v. INS*, we left open the question of whether certain government conduct could be so abhorrent to an individual's beliefs that it would constitute persecution even if it did not include physical harm. 12 F.3d 1233, 1242 (3d Cir. 1993) ("[W]e will assume for the sake of argument that the concept of persecution is broad enough to include governmental measures that compel an individual to engage in conduct that is not physically painful or harmful but is abhorrent to that individual's deepest beliefs. An example of such conduct might be requiring a person to renounce his or her religious beliefs or to desecrate an object of religious importance."). Every circuit court to consider the question has held that being forced to practice one's religion underground constitutes persecution. *See Kazemzadeh v. Att'y Gen.*, 577 F.3d 1341, 1354 (11th Cir. 2009) (holding that "having to practice religion underground to avoid punishment is itself a form of persecution"); *id.* at 1359-60 (Marcus, J., concurring) (examining Supreme Court precedent and the legislative history of the INA, and concluding that "[n]either the founders nor the drafters of the Refugee Act could have accepted the narrow view that secret practice can cure persecution"); *Zhang v. Ashcroft*, 388 F.3d 713, 719 (9th Cir. 2004) (rejecting the IJ's finding that the petitioner could avoid persecution by practicing his religion in private, and explaining that "to require [the petitioner] to practice his

8

beliefs in secret is contrary to our basic principles of religious freedom and the protection of religious refugees"); *Muhur v. Ashcroft*, 355 F.3d 958, 960 (7th Cir. 2004) (holding that "the fatal flaw in the immigration judge's opinion lies . . . in the assumption—a clear error of law—that one is not entitled to claim asylum on the basis of religious persecution if . . . one can escape the notice of the persecutors by concealing one's religion").

The BIA did not address this question, and so we lack a ruling to review. Accordingly, we will grant the petition for review in part, deny it in part, and remand to the BIA to determine whether, in light of these authorities, being forced to practice one's religion underground constitutes persecution and, if so, what level of force is required. On remand, the BIA should also determine whether, as a factual matter, Shi was required to hide his religious practice to avoid being targeted by the government.

*       *       *       *       *

We therefore grant Shi's petition in part, deny it in part, and remand this matter to the BIA.