**UNITED STATES of America,
Appellee,**

v.

**David WENGER, Defendant-Appellant.**

**No. 476, Docket 71-2130.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 21, 1972.

Decided March 6, 1972.

Elkan Abramowitz, New York City (Weiss, Bronston, Rosenthal, Heller & Schwartzman, New York City, on the brief), for defendant-appellant.

Walter M. Phillips, Jr., Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., for the S. D. N. Y.; Henry Putzel, III, and Peter F. Rient, Asst. U. S. Attys., on the brief), for appellee.

Before SMITH, FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

In April 1970, appellant David Wenger was convicted in the United States District Court for the Southern District

of New York, after a jury trial presided over by Harold R. Tyler, Jr., J., of agreeing to receive, and receiving, a bribe as accountant and auditor for a Teamsters Union Pension Fund. 18 U. S.C. §§ 371, 1954. In June 1970, Judge Tyler sentenced Wenger to concurrent sentences of two years and three months on the two counts of his conviction.[1] That conviction was affirmed by this court in April 1971. United States v. Russo, 442 F.2d 498 (1971). Meanwhile, Wenger had been found guilty of another conspiracy and bribery after a jury trial in the Southern District, this time before Milton Pollack, J. In December 1970, Judge Pollack imposed concurrent prison terms of two years on that conviction.[2] Wenger now appeals from an order of Judge Tyler entered November 1, 1971, which denied Wenger's motion under Fed.R.Crim.P. 36 to correct a "clerical mistake" in the district court records regarding Wenger's conviction before Judge Tyler. The claim of a so-called clerical mistake actually raises the substantial issue whether the sentences imposed upon Wenger by Judges Tyler and Pollack amounted to a total of two years and three months or four years and three months. For reasons set forth below, we affirm Judge Tyler's order.

The precise claim made in the Rule 36 motion was that the court's records of the conviction before Judge Tyler should reflect the "fact" that Wenger has been serving Judge Tyler's sentence since January 4, 1971. The argument rests upon the following chain of events. After Judge Tyler imposed sentence in June 1970, Wenger was allowed to remain on bail while he appealed from that sentence. However, after Judge Pollack imposed sentence in December 1970 on the crimes tried before him, Judge Pollack denied bail pending appeal from that sentence. Wenger then moved in this court for bail, and on January 4, 1971, we denied the motion. On the same day, Wenger surrendered to the marshal to commence his prison term.[3] Wenger argues that when that occurred, he began to serve not only Judge Pollack's sentence, but Judge Tyler's as well. The reasons offered are that the sentences of Judge Tyler and Judge Pollack are concurrent as a matter of law and that surrender on the latter, therefore, commenced service on both. We need deal only with the former claim because appellant seems to concede—and we agree—that unless the sentences are concurrent his case falls.

■■ Appellant argues that the sentences of Judges Tyler and Pollack must be concurrent because Judge Pollack "though aware of Judge Tyler's earlier sentence . . . did not refer to it in imposing his sentence on Wenger. It is well-settled that the lack of reference to an earlier sentence renders the second sentence concurrent to the earlier one."[4] It is true that an all but conclusive presumption does exist in federal sentencing that unless otherwise stated a sentence imposed on a given count or indictment is concurrent with other federal sentences then imposed or previously imposed. See Borum v. United States, 133 U.S.App.D.C. 147, 409 F.2d 433, 439–441 (1967), cert. denied, 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969); 2 Wright, Fed. Practice and Procedure—Crim. § 527, at 420 (1969). This presumption is not universal; various states have different ones. See ABA Project on Minimum Standards for Crim. Justice, Sentencing Alternatives and Procedures § 3.4, at 173–74 (Tent. Draft 1967) [ABA Sentencing]. The federal presumption apparently has never received explicit Supreme Court approval, although as early as 1887 Justice Bradley, sitting as a circuit judge, could say that "by force of law" unless other-

---

1. Wenger also received a $5,000 fine on each count.

2. Wenger also received a $5,000 fine on each count.

3. The appeal from the conviction before Judge Pollack was subsequently withdrawn.

4. Appellant's brief at 5.

wise indicated "each sentence would begin to run at once, and they would all run concurrently." United States v. Patterson, 29 F. 775, 778 (3d Cir.1887). Cf. United States v. Daugherty, 269 U.S. 360, 363, 46 S.Ct. 156, 70 L.Ed. 309 (1925).

We can find only one instance in which this circuit employed the presumption. United States v. Chiarella, 214 F.2d 838, 841 (2d Cir.), cert. denied, 348 U.S. 902, 75 S.Ct. 226, 99 L.Ed. 708 (1954). There the district judge at oral sentencing stated that there would be consecutive sentences on counts 1, 2 and 4, and that the sentence on count 3 would be concurrent with counts 1 and 2. On appeal, counts 1 and 2 were reversed, so the issue (after some unusual procedural steps) was the proper relationship between the sentences on counts 3 and 4. This court held as a matter of law that the two were concurrent.[5]

The purpose of the presumption seems to be that if nothing is specifically indicated, there is no way of knowing whether the sentences are to be concurrent or consecutive, so courts have opted for the shorter sentence, thus placing the burden squarely on the prosecutor and judge to affirmatively suggest and impose the longer sentence. Official inadvertence works in favor of the defendant.[6] In theory there could have been a procedure for going back to the sentencing judge to clarify the issue, but the presumption seems to have emerged so early that any such procedure was cut off by the double jeopardy clause prohibiting increases in sentences which have begun to be served. United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931); Ex parte Lange, 85 U.S. (18 Wall) 163, 21 L.Ed. 872 (1873). Cf. United States v. Sacco, 367 F.2d 368 (2d Cir.1966). The continued existence of the presumption would certainly seem to be supported by its simplicity, by the general notion of holding the Government to precision before a defendant can be jailed, and by the apparent desire to minimize consecutive sentences generally. See ABA Sentencing § 3.4(b) and (b) (iv), at 171–72, 179–80.

We have outlined the presumption and its justifications at such length to make clear that we would ordinarily have no quarrel with it. Although United States v. Chiarella, *supra*, dealt only with counts of the same indictment, we are willing to assume that the presumption applies to sentences imposed upon different indictments at different times. But we are frankly reluctant to apply the presumption here. First, appellant had no misapprehension at all about the sentence imposed by Judge Pollack.[7]

---

5. Judge Harlan dissented on a different ground.

6. That such an affirmative burden was placed upon courts quite early is reflected in a number of 19th century commentaries on criminal procedure. See 1 J. Bishop, Commentaries on the Criminal Law § 953, at 558–59 (5th ed. 1872):

    When a prisoner, under an unexpired sentence of imprisonment, is convicted of a second offense; or when there are two or more convictions on which sentence remains to be pronounced; *the judgment may direct*, that each succeeding period of imprisonment shall commence on the termination of the period next preceding. . . . [Footnotes omitted; emphasis added.]

    See also J. Chitty, A Practical Treatise on the Criminal Law 718, 800 (1816).

7. Appellant does not dispute that Judge Pollack's unexpressed intention was to impose consecutive sentences. Indeed, on November 17, 1971, after the motion before Judge Tyler was denied and Wenger filed the notice of this appeal, Judge Pollack on his own motion in open court in the presence of counsel explicitly indicated what his intention was:

    I had no intention and, as I think the facts spell out, there was no purpose in my mind that this sentence would run concurrently with any other sentence which might have been imposed or which this defendant would be subject to by any other Court.

    *    *    *    *    *    *    *

    In short, if he has a two year commitment by reason of anything Judge Tyler did which became final well after the time of my commitment of the defendant, then the clear understanding was that he had two years here and two years there or a total of four years. Standing alone, this "clarification" after

Upon the application for bail in this court pending appeal from that sentence, the Government stated:

> It was clearly not an abuse of discretion to deny bail pending appeal in this case. Wenger has previously been sentenced to a term of 27 months for the same charge of accepting a kickback. He is also charged in four other indictments with agreeing to receive a similar payoff. *The total prison sentence he currently faces is four years and three months.* In addition, Wenger was convicted by a jury in December, 1970 in the Eastern District of New York for income tax evasion, and is awaiting sentence on that conviction. In view of Wenger's involvement with the law and his mounting convictions, Judge Pollack's decision to deny Wenger bail pending appeal was certainly not an abuse of discretion for the reason that there is now a serious likelihood of flight.[8]
>
> [Emphasis added.]

There is no indication that appellant replied that the "total prison sentence" he was then facing was not "four years and three months" but was two years less, even though on an application for bail it would have been in his interest to do so. That appellant had no misunderstanding about his sentences is further confirmed by statements made by his counsel when Wenger appeared not long thereafter for additional sentencing before two other judges—first in April 1971 before Judge Jack B. Weinstein in the Eastern District[9] and then in August 1971 before Judge Charles M. Metzner in the Southern District.[10] At the former, Wenger's counsel stated:

> He now stands, having been sentenced twice in the United States District Court for the Southern District of New York to terms of imprisonment which, taken together, total very nearly the maximum provided by statute in this case, something over four years, the maximum here being five.

Before Judge Metzner, the following colloquy occurred:

> The Court: I would like to get clear for the record what the status is of the prison terms previously imposed by Judges Tyler and Pollack.
>
> The record indicates to me that . . . Mr. Wenger was convicted on two counts [before Judge Tyler].
>
> . . .
>
> Mr. Kove: That is correct, your Honor.
>
> The Court: Subsequently, he was convicted on one count—or was it two counts?—before Judge Pollack? It really doesn't make any difference—
>
> Mr. Kove: It was two.
>
> The Court: For which *he received two year prison terms to be consecutive with the terms imposed by Judge Tyler?*
>
> Mr. Kove: *That is correct.*
>
> \* \* \* \* \* \*
>
> The Court: Do I understand Mr. Wenger is now presently incarcerated?
>
> Mr. Kove: Yes, your Honor.
>
> The Court: And he is serving Judge Pollack's term?
>
> Mr. Kove: Exactly.
>
> The Court: And when that term is finished he will commence the service of Judge Tyler's term?
>
> Mr. Kove: As it stands now, unless some efforts are made to adjust that situation, that is what it is at the present time.

Wenger started to serve his sentence would be ineffective. See Borum v. United States, *supra;* Schultz v. United States, 384 F.2d 374 (5th Cir. 1967); United States v. Sacco, *supra.* But the judge's statement does highlight that both appellant and the judge had the same understanding of the sentence when imposed.

8. Government's affidavit in opposition pp. 2–3 (Dkt. No. 35818).

9. After a jury trial on a charge of income tax evasion. The judgment of conviction was affirmed by this court in January 1972. 455 F.2d 308 (1972).

10. After pleas of guilty to three separate indictments charging receipt of three more bribes in connection with mortgage loan applications to the Fund.

The Court: Even though Judge Pollack's term—the judgment of conviction says it is to be consecutive with Judge Tyler's.

Mr. Kove: Yes, we assumed that, until such time as corrective procedures are made. For all practical purposes—

The Court: *He is facing four years and two months maximum?*

Mr. Kove: *Exactly; that is what he is facing at the present time, realistically.*

\* \* \* \* \* \*

Mr. Kove: Now, what I am saying, your Honor, is that four years and three months for these activities—and they are so closely · related in time—would be actually cruel and unusual punishment at this stage, because as far as we know Mr. Wenger has time left to serve, and it is becoming more and more destructive to him and to his family . . . .

\* \* \* \* \* \*

The Court: Well, I agree that with total sentences of four years and three months that an additional prison term would be uncalled for; but I do think, in view of the fact that money passed in each one of these cases, that fines are in order.[11] [Emphasis added.]

■ Thus, it is clear beyond a doubt that Wenger knew he had been sentenced to two years and three months by Judge Tyler and two *more* years by Judge Pollack. To insist upon application of the concurrent sentence presumption in the teeth of this fact would be to indulge in sheer ritual. Other courts, in far less compelling situations, have refused to apply the presumption. See, *e.g.*, Buie v. King, 137 F.2d 495 (8th Cir.1943); United States v. Remus, 12 F.2d 239 (6th Cir.), cert. denied, 271 U. S. 689, 46 S.Ct. 640, 70 L.Ed. 1153 (1926).

Our second reason for being unwilling to apply the general presumption is based on notions of estoppel. As the above colloquies make clear, before two other federal judges Wenger took the position that the first two sentences were consecutive and used that assertion to persuade those judges to impose no further prison terms.[12] This was obvious in the proceeding before Judge Metzner and almost as clear in the one before Judge Weinstein.[13] Yet, less than a month later, Wenger moved before Judge Tyler to correct "clerical mistakes" in his sentence on the flatly contradictory theory that as a matter of law Judge Pollack's sentence and Judge Tyler's sentence were concurrent. We need not inquire whether—and we do not suggest that—there was intentional misrepresentation to Judges Weinstein and Metzner. We are willing to accept the explanation of appellant's present counsel that it was the colloquy before Judge Metzner (at which he was present) that caused him to "check the record . . . and discover that Judge Pollack made no reference to Judge Tyler's sentence." [14] The real question is not whether there was good or bad faith but whether a party—even a criminal defendant—can take such absolutely inconsistent positions at about the same time before different federal judges and get the benefit of both. While we can find no direct authority on point, *cf.* 1B Moore, Federal Practice ¶0.405[8] (2d ed. 1965), we believe that if there is an intellectually respectable way of preventing such a course of conduct, we should.

11. We note that the record does not reveal what "corrective procedures" counsel for Wenger envisioned at that time. Quite possibly,· Judge Metzner thought that 'a motion for reduction of sentence under Fed.R.Crim.P. 35 would be brought before Judge Tyler.

12. Both judges fined Wenger and imposed suspended sentences.

13. Judge Weinstein stated:
I do not really seè the necessity of a further term of incarceration under these circumstances.
The "circumstances," of course, included the statement by Wenger's counsel quoted in the text.

14. Appellant's reply brief at 2 n*.

■ When a defendant's own conduct shows that even before he began service of the second sentence he understood it to be consecutive to the first, and that understanding continued for months thereafter, and when a defendant uses that construction of his second sentence to obtain leniency from two other federal judges and thereafter attempts to take a flatly inconsistent position to obtain further advantage, we do not feel justified in applying the general presumption. The sentences are consecutive, not concurrent.

Judgment affirmed.