**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1630
_____


JOSE JUAN CHAVEZ-ALVAREZ,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                              Respondent


_____


On Petition for Review from the
Board of Immigration Appeals
BIA-1 No. A092-167-374
Immigration Judge: The Honorable Andrew Arthur

_____


Argued on
March 17, 2015

Before: SMITH, JORDAN, and VAN ANTWERPEN,
*Circuit Judges*

(Filed: April 16, 2015)

Valerie A. Burch, Esq.
Craig R. Shagin, Esq.          **[ARGUED]**
The Shagin Law Group
120 South Street
The Inns of St. Jude
Harrisburg, PA  17101
	*Counsel for Petitioner*

Jeffrey Bernstein, Esq.
Kathryn L. DeAngelis, Esq.          **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC  20044
	*Counsel for Respondent*

_____

OPINION
_____

Smith, *Circuit Judge*.

Jose Juan Chavez-Alvarez petitions the Court for review of a decision of the Board of Immigration Appeals (BIA), which affirmed the determination of the Immigration Judge (IJ) that Chavez-Alvarez is subject to removal under Sections 237(a)(2)(A)(iii) and 101(a)(43)(F) of the Immigration and Nationality Act (INA), 8 U.S.C.

§§ 1227(a)(2)(A)(iii) and 1101(a)(43)(F), as an alien who has been convicted of an aggravated felony. Chavez-Alvarez also petitions for review of the pretermission of his application for a waiver of inadmissibility pursuant to Section 212(h) of the INA, 8 U.S.C. § 1182(h).[1] For the reasons that follow, we will grant Chavez-Alvarez's petition and remand to the BIA.

## I.

Chavez-Alvarez is a citizen of Mexico who entered the United States at the age of two without admission or parole. On September 30, 1989, Chavez-Alvarez adjusted his status and became a lawful permanent resident. From June 27, 1991 through January 30, 2004, Chavez-Alvarez served in the United States Army. After his first entry into the United States, Chavez-Alvarez has only departed the United States in his capacity as a member of the Army.

During the night of August 11, 2000 and early the following morning, Chavez-Alvarez had nonconsensual sexual contact with a female platoon member. As provided in the Stipulation of Fact from Chavez-Alvarez's court-martial, Chavez-Alvarez was drinking alcohol with his platoon

---

[1] Chavez-Alvarez also challenges the IJ's conclusion that he is removable based on having been convicted of two crimes involving moral turpitude not arising from the same scheme of criminal conduct. *See* 8 U.S.C. § 1227(a)(2)(A)(ii). As the BIA did not address this issue, it is not properly raised in this appeal and the BIA should consider the issue in the first instance, if necessary.

members at a bar outside of the army base in Tongduchon, Korea. Chavez-Alvarez escorted a visibly intoxicated female platoon member back to the army base; the female platoon member was unable to walk on her own. Chavez-Alvarez assisted the woman back to her bedroom and began helping her change out of her clothing. During this time, the woman vomited between six to eight times and eventually lay unconscious on her bed. Despite being aware that she was unable to give consent due to her incapacitation, Chavez-Alvarez began to touch her genitals, including performing oral sex on her. She began to protest, but Chavez-Alvarez believed her movement indicated consent. He then had sexual intercourse with the woman.

In the early morning of August 12, 2000, Chavez-Alvarez provided a signed statement to the Criminal Investigation Division of the United States Army denying that he had engaged in sexual contact with the female platoon member. In a written statement about one hour later, Chavez-Alvarez again denied such sexual contact. Chavez-Alvarez was aware that both statements were false.

On September 6, 2000, Chavez-Alvarez was charged with violating four articles in the congressionally-enacted Uniform Code of Military Justice (UCMJ): Article 107, 10 U.S.C. § 907, for two specifications[2] (i.e., counts) of making

_____

[2] "A specification is a plain, concise, and definite statement of the essential facts constituting the offense charged. A specification is sufficient if it alleges every element of the charged offense expressly or by necessary

4

false official statements; Article 120, 10 U.S.C. § 920, for rape; Article 125, 10 U.S.C. § 925, for sodomy; and, Article 134, 10 U.S.C. § 934, for two specifications of violating the general article.[3] On December 12, 2000, Chavez-Alvarez pleaded guilty to violating five of the charged specifications (all of the specifications except for rape). The military judge sentenced Chavez-Alvarez as follows: "To be discharged from the service with a bad-conduct discharge, to be reduced to the grade of E-1, and to be confined for a period of 18 months." App'x 70. Chavez-Alvarez's sentence did not apportion the 18-month confinement between the five specifications or the three articles to which he pleaded.

On June 5, 2012, approximately ten years after Chavez-Alvarez completed his confinement, U.S. Department of Homeland Security (DHS) agents arrested Chavez-Alvarez

---

implication. No particular format is required." Rules for Courts-Martial (R.C.M.) 307(c)(3), *Manual for Courts-Martial*, II-28, 29 (2000 ed.). Each specification "[s]tates only one offense" and "[c]harges and specifications alleging all known offenses by an accused" may be brought at one time. R.C.M 307(c)(4), *Manual for Courts-Martial*, II-29.

[3] Article 134 (the general article), punishes a person subject to the UCMJ for, *inter alia,* "all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces." 10 U.S.C. § 934; *see Parker v. Levy*, 417 U.S. 733, 733 (1974).

at his home in New Freedom, Pennsylvania. DHS charged Chavez-Alvarez with being removable pursuant to Sections 237(a)(2)(A)(iii) and 101(a)(43)(F) of the INA as having been convicted of an aggravated felony for committing a "crime of violence." 8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(A)(iii) (citing 18 U.S.C. § 16). On June 29, 2012, DHS also charged Chavez-Alvarez with being removable based on Section 237(a)(2)(A)(ii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(ii), as having been convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. DHS has detained Chavez-Alvarez pursuant to 8 U.S.C. § 1226(c) without a bond hearing since June 5, 2012.[4]

On November 1, 2012, the IJ concluded that Chavez-Alvarez was removable on both grounds. On March 5, 2013, the IJ also concluded that Chavez-Alvarez was not eligible to apply for a waiver under Section 212(h) of the INA and entered an order of removal. Chavez-Alvarez timely appealed to the BIA, which issued a precedential opinion on March 14, 2014 affirming the order of removal based on Chavez-Alvarez having an aggravated felony conviction and not being eligible for a Section 212(h) waiver. Chavez-Alvarez timely filed a petition for review. This Court issued a stay of removal pending the outcome of these proceedings.

---

[4] Chavez-Alvarez separately filed a petition for a writ of habeas corpus challenging his detainment. *See Chavez-Alvarez v. Warden York Cnty. Prisons*, No. 14-1402, 2015 WL 1567019, --- F.3d --- (3d Cir. Apr. 9, 2015).

## II.

The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Because the basis for removal is Chavez-Alvarez's conviction for an aggravated felony, we review the BIA's ruling under Section 242(a)(2)(C)-(D) of the INA, 8 U.S.C. § 1252(a)(2)(C)-(D), for "constitutional claims and questions of law." *Guzman v. Att'y Gen.*, 770 F.3d 1077, 1082 (3d Cir. 2014). Whether an alien's offense constitutes an aggravated felony is "a purely legal question." *Restrepo v. Att'y Gen.*, 617 F.3d 787, 790 (3d Cir. 2010). We review legal challenges *de novo*. *Id.* "When the BIA issues its own decision on the merits, rather than a summary affirmance, we review its decision, not that of the IJ." *Syblis v. Att'y Gen.*, 763 F.3d 348, 352 (3d Cir. 2014) (quoting *Pieschacon-Villegas v. Att'y Gen.*, 671 F.3d 303, 310 (3d Cir. 2011) (internal quotation marks omitted)). We may consider the opinion of the IJ "only insofar as the BIA deferred to it." *Roye v. Att'y Gen.*, 693 F.3d 333, 339 (3d Cir. 2012).

## III.

"Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). An aggravated felony is defined as, *inter alia*, "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). The government bears "the burden of establishing by clear and convincing evidence" that an alien

7

has committed an aggravated felony. 8 U.S.C. § 1229a(c)(3)(A); *Nijhawan v. Holder*, 557 U.S. 29, 42 (2009). Chavez-Alvarez argues that he was not convicted of an aggravated felony because he was neither convicted of a crime of violence nor received a sentence for which the term of imprisonment was at least one year.

The BIA found Chavez-Alvarez removable based on his general court-martial[5] conviction for committing sodomy in violation of Article 125 of the UCMJ, which, at the time of his conviction, provided:

---

[5] There are three kinds of courts-martial in the armed forces: general courts-martial, special courts-martial, and summary courts-martial. 10 U.S.C. § 816. General courts-martial may consist of either:

> (A) a military judge and not less than five members or, in a case in which the accused may be sentenced to a penalty of death, the number of members determined under section 825a of this title (article 25a); or

> (B) only a military judge, if before the court is assembled the accused, knowing the identity of the military judge and after consultation with defense counsel, requests orally on the record or in writing a court composed only of a military judge and the military judge approves.

10 U.S.C. § 816(1). Chavez-Alvarez's general court-martial consisted of only a military judge.

8

(a) Any person subject to this chapter who engages in unnatural carnal copulation with another person of the same or opposite sex or with an animal is guilty of sodomy. Penetration, however slight, is sufficient to complete the offense.

(b) Any person found guilty of sodomy shall by punished as a court-martial may direct.

10 U.S.C. § 925 (1956).[6]

After the military judge accepted Chavez-Alvarez's guilty plea as to violating the five specifications, which included the sodomy charge, the military judge issued a general (or gross) sentence requiring Chavez-Alvarez "to be

---

[6] All references to Article 125, 10 U.S.C. § 925, in this opinion are to the 1956 version of the statute that was in effect at the time Chavez-Alvarez committed the offense. Article 125 has since been amended, and effective December 26, 2013, the statute now only prohibits sodomy committed by force or without consent of the other person:

(a) Forcible sodomy.—Any person subject to this chapter who engages in unnatural carnal copulation with another person of the same or opposite sex by force or without the consent of the other person is guilty of forcible sodomy and shall be punished as a court-martial may direct.

10 U.S.C. § 925 (2013).

confined for a period of 18 months." Thus, the sentence issued by the military judge in Chavez-Alvarez's general court-martial was not apportioned between the five offenses for which Chavez-Alvarez was convicted.

The maximum punishments for these articles of the UCMJ, as prescribed by the *Manual for Courts-Martial*,[7] are as follows:

> Article 107 (False official statements): "dishonorable discharge, forfeiture of all pay and allowances, and confinement for 5 years." Art. 107, *Manual for Courts-Martial*, IV-46–47.
>
> Article 125 (Sodomy): "(1) *By force and without consent.* Dishonorable discharge, forfeiture of all pay and allowances, and confinement for life." Art. 125, *Manual for Courts-Martial*, IV-79.
>
> Article 134 (Assault—indecent): "Dishonorable discharge, forfeiture of all pay and allowances, and confinement for 5 years." Art. 134, *Manual for Courts-Martial*, IV-97.
>
> Article 134 (Adultery): "Dishonorable discharge, forfeiture of all pay and allowances, and confinement for 1 year." Art. 134, *Manual for*

---

[7] All citations to the *Manual for Courts-Martial* are to the 2000 edition, the edition in effect at the time of Chavez-Alvarez's general court-martial.

*Courts-Martial*, IV-96–97.

Chavez-Alvarez's 18-month sentence, therefore, was below the maximum punishment for all but one of his convictions (the general article adultery conviction).

In this case, whether the statute of conviction, 10 U.S.C. § 925 (Article 125 of the UCMJ), contains all the elements of a "crime of violence" under 18 U.S.C. § 16 is a question we need not reach.[8] *See Moncrieffe v. Holder*, 133

---

[8] In addition, we need not reach Chavez-Alvarez's argument regarding the availability of a Section 212(h) waiver for an alien subject to removal. 8 U.S.C. § 1182(h). On remand, the BIA may conclude that Chavez-Alvarez is no longer subject to removal, at which point this issue would be moot. And even if Chavez-Alvarez is removable based on Section 237(a)(2)(A)(ii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(ii), as having been convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, the legal basis for any relief from removal that Chavez-Alvarez may seek would be based on arguments not presently before us. Thus, despite the fact that several of our sister courts of appeals have found that Section 212(h) waivers are available to an alien seeking a waiver from inside our borders *only* if an alien files an application for adjustment of status concurrently with a waiver request, *see Rivas v. Att'y Gen.*, 765 F.3d 1324, 1329–30 (11th Cir. 2014), *Cabral v. Holder*, 632 F.3d 886, 891–94 (5th Cir. 2011), *Klementanovsky v. Gonzales*, 501 F.3d 788,

11

S. Ct. 1678, 1684 (2013) (outlining the categorical approach); *Evanson v. Att'y Gen.*, 550 F.3d 284, 291 (3d Cir. 2008) (discussing the "'formal categorical approach' [used] in evaluating whether predicate convictions fall within the definition of 'aggravated felony'"). This is because regardless of whether Chavez-Alvarez's sodomy conviction is a crime of violence, he did not receive a sentence "for which the term of imprisonment [was] at least one year." *See* 8 U.S.C. § 1101(a)(43)(F).

It is patent that the sentencing procedure used by the military judge provided no specific proof regarding the way in which the sentence was rendered as to each charge. Indeed,

> [I]t is the normal, traditional and well understood practice in the administration of military justice that 'there shall be but a single sentence covering all the convictions on all the charges and specifications upon which the accused is found guilty, however separate and distinct may be the different offenses found, and however different may be the punishments called for by the offenses.'

*Jackson v. Taylor*, 234 F.2d 611, 613 (3d Cir. 1956) (quoting 1 Winthrop, Military Law, 2d ed. § 615) (challenging the validity of a modified sentence and addressing the intricacies

---

791–94 (7th Cir. 2007), we decline to address this question in a precedential opinion at this time.

12

of the military's "gross sentence practice"), *aff'd*, 353 U.S. 569 (1957). When a general sentence is issued by a military tribunal, it is typically "conjectural what sentence the court-martial would have imposed" for one charge in the absence of another. *Id.* at 614.

So too here. The record is devoid of any indication as to how or if the military judge apportioned the general sentence among Chavez-Alvarez's various convictions. Nor does the *Manual for Courts-Martial* contain any suggestion that a military judge should do so. The assumptions made about Chavez-Alvarez's general sentence are fundamentally incompatible with the Government's burden of proof. To the extent that any proof of Chavez-Alvarez's sentence ever existed, it has apparently been lost to time. In reinforcing that the burden of proof on the DHS to establish deportation is by "clear and convincing" evidence, the Supreme Court has noted that "uncertainties caused by the passage of time are likely to count in the alien's favor." *Nijhawan*, 557 U.S. at 42. The record here establishes only uncertainty—a factor that must redound to Chavez-Alvarez's benefit.

The BIA and the Government provide independent justifications for finding Chavez-Alvarez removable, both of which fail.

Relying on a 60-plus-year-old BIA decision, the IJ reasoned that "[g]eneral sentences for multiple convictions have been interpreted by the BIA to apply to each conviction, to run concurrently." App'x 36 (citing *Matter of S-*, 3 I. & N. Dec. 460 (BIA 1948)). Despite acknowledging Chavez-

13

Alvarez's argument that the Government's interpretation was contrary to law and statute, the IJ reasoned that he was bound by *Matter of S-*. *Id.* The BIA similarly concluded that *Matter of S-* "support[ed] [the IJ's] conclusion that the respondent's general sentence applies to his conviction for sodomy by force." App'x 11 (citing as further support *Martinez v. Nagle*, 53 F.2d 195 (9th Cir. 1931)).

In *Matter of S-*, the BIA addressed whether the relevant record established that an alien who had pleaded guilty in federal court to three counts of an indictment and received "a general sentence of 15 months imprisonment and a fine of $1 as to all the offenses" could be found to have "been sentenced to a term of imprisonment for 1 year or more" for violation of the specific federal statute that would subject the alien to deportation. 3 I. & N. Dec. at 461 (deportation under the Narcotic Drugs Import and Export Act of 1909). The BIA relied on an earlier Ninth Circuit decision that, according to the BIA, was "on all fours with the instant case": *Martinez v. Nagel*, 53 F.2d 195 (9th Cir. 1931). *Id.* In doing so, the BIA applied the Ninth Circuit's presumption of judicial regularity, specifically that: "The court might have sentenced the defendant on each count or it might impose one sentence upon both counts either upon a plea or verdict of guilty, and unless it specifically appears that the sentence was imposed upon one count only, the presumption obtains that it was a sentence upon both counts." *Id.* at 462 (quoting *Martinez*, 53 F.2d at 197).

The Ninth Circuit's 1931 decision in *Martinez* says nothing about general sentencing in the military and is based

14

on concurrent sentencing in federal court. For example, in addressing general sentences, the Ninth Circuit reasoned, "'each sentence begins to run at once and all run concurrently, in the absence of some definite, specific provision that the sentences shall run consecutively, specifying the order of sequence.'" *Martinez*, 53 F.2d at 197 (quoting *Puccinelli v. United States*, 5 F.2d 6, 9 (9th Cir. 1925)). The rule from *Martinez* was most recently cited in 1982 (and before the enactment of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (1984)) as "a long-standing presumption, when the record is silent, in favor of concurrent sentences when the defendant has been found guilty on two counts and has been sentenced to imprisonment on one count and probation on the other." *United States v. Rodriguez*, 682 F.2d 827, 829 (9th Cir. 1982). Yet *Martinez* says nothing about general sentences in the military or how such sentences should be interpreted for removal purposes under the INA. The Ninth Circuit's presumption is simply inapplicable to the sentencing scheme at issue in this case.

On appeal, the Government concedes that *Matter of S-* has limited applicability. Instead, the Government provides two separate arguments in support of the BIA's decision, neither of which is persuasive.

First, the Government contends that if we agree with Chavez-Alvarez, "because the military employs general sentencing, no criminal alien service member who has been charged with more than [one] offense, at least one of which is an aggravated felony, can ever be ordered removed from the United States based on his commission of that crime." Att'y

15

Gen. Br. 27.  As a starting point, the Government is wrong that alien service members could never be removable if they receive a general sentence after being convicted of multiple offenses if one or more of the offenses are an aggravated felony.  We posit an example.  An alien service member is convicted of two offenses each of which has a maximum sentence of five years.  The military judge finds that each offense is subject to an independent sentence, and the service member receives a general sentence of 10 years.  One could conclude, barring some nuance not anticipated in this hypothetical, that the alien service member received a sentence of five years as to each offense.[9]  Such apportioning

---

[9] Sentencing procedures in courts-martial are governed by the Rules for Courts-Martial.  Rule 1002 provides that "[s]ubject to limitations in this Manual, the sentence to be adjudged is a matter within the discretion of the court-martial; except when a mandatory minimum sentence is prescribed by the code, a court-martial may adjudge any punishment authorized in this Manual, including the maximum punishment or any lesser punishment, or may adjudge a sentence of no punishment."  R.C.M. 1002, *Manual for Courts-Martial*, II-125.  In terms of the available punishment, when "the accused is found guilty of two or more offenses, the maximum authorized punishment may be imposed for each separate offense."  R.C.M. 1003(c)(1)(C), *Manual for Courts-Martial*, II-128.  Unless otherwise provided in paragraph 5 of Part IV of the *Manual*, "offenses are not separate if each does not require proof of an element not required to prove the other."  *Id.*  If the military judge determines that the offenses are not separate, "the maximum

16

would not require the kind of guesswork done by the Government in this case.

Even assuming we were sympathetic with the Government's position on this policy issue, the Government essentially asks this Court to legislate a presumption in favor of removing alien military service members that is strikingly absent from the INA or relevant Supreme Court precedent. There are solutions to this potential dilemma, but they do not lie with the judiciary. For example, the President can prescribe (through the *Manual for Courts-Martial*) that multiple sentences, as opposed to general sentences, be issued by a court-martial. In addition, Congress has the authority to require multiple sentences more generally in the military or to amend the INA to add a special exception for evaluating the convictions of service members. Such solutions are not for this Court to devise, however. As such, the mere fact that "'Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning.'" *Lockhart v. United States*, 546 U.S. 142, 146 (2005) (quoting *Union Bank v. Wolas*, 502 U.S. 151, 158 (1991)). The definition of an aggravated

punishment for those offenses shall be the maximum authorized punishment for the offense carrying the greatest maximum punishment." *Id.* In a court-martial composed of a military judge alone, after all applicable and appropriate sentencing procedures, *see* R.C.M. 1001-1006, *Manual for Courts-Martial*, II-125–35, the sentence is announced by the military judge in the presence of all the parties. R.C.M. 1007(a), *Manual for Courts-Martial*, II-135.

17

felony, 8 U.S.C. § 1101(a)(43)(F), requires a conviction with a term of imprisonment of at least one year, and here we simply have insufficient evidence of such a conviction.

The Government's second argument requires mathematic gymnastics and rank speculation. Specifically, the Government argues that "given Alvarez's 18-month sentence, the nature of the crimes committed, and the maximum allowable sentence for each offense, it cannot be seriously disputed that at least one year of the sentence is attributable to the forcible sodomy offense." Att'y Gen. Br. 27. As support, the Government postulated that Chavez-Alvarez would receive a maximum sentence for each conviction and that he would live to 75 years of age, resulting in a "proportional breakdown" set out in a table. *Id.* at 27–28 & n.10. The table provided:

(1.5 year actual sentence * maximum sentence for charge A) / 86 year aggregate maximum sentence for all charges = proportional sentence for charge A.

| Conviction | Maximum sentence | Proportional Share of Sentence |
|---|---|---|
| Art[] 107 false official statement | 5 years | 1 month |

18

| Art 125 forcible sodomy | Life (75 years) | 15 months, 3 weeks |
| --- | --- | --- |
| Art 134 adultery | 1 year | 6 days |
| Art 134 indecent act | 5 years | 1 month |

*Id.* at n.10. This argument and post-hoc rationalization of Chavez-Alvarez's sentence is so far removed from the relevant proof we may consider, *Nijhawan*, 557 U.S. at 35–36, and the clear and convincing evidence the Government must provide by statute, 8 U.S.C. § 1229a(c)(3)(A), that it scarcely passes the laugh test.

In sum, the BIA committed legal error in concluding that Chavez-Alvarez's sodomy conviction was a crime "for which the term of imprisonment [was] at least one year." 8 U.S.C. § 1101(a)(43)(F).

## IV.

We will grant Chavez-Alvarez's petition and remand the case to the BIA for further proceedings.