*Persad v. Barr*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2018

(Argued: October 16, 2018     Decided: March 24, 2020)

Docket No. 17-661

DASRATH D. PERSAD,

*Petitioner,*

–v.–

WILLIAM P. BARR, UNITED STATES ATTORNEY GENERAL,

*Respondent.*[*]

B e f o r e :

NEWMAN, CARNEY, and SULLIVAN *Circuit Judges.*[‡]

[*] The Clerk of Court is directed to amend the caption as above.

[‡] Judge Richard J. Sullivan, of the United States District Court for the Southern District of New York, sitting by designation when this case was argued and a member of the Court of Appeals when this Opinion issued.

Dasrath D. Persad ("Persad"), a legal permanent resident, petitions for review of an agency order requiring his removal to Trinidad and Tobago. The agency's decision rested on its determination that Persad's 1992 military conviction for larceny constituted an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43)(G). To establish an aggravated felony under that statutory provision, the government must show by clear and convincing evidence that a noncitizen committed a "theft offense" that resulted in a term of imprisonment of "at least one year." 8 U.S.C. § 1101(a)(43)(G). In his 1992 court-martial, Persad pleaded guilty to four violations of the Uniform Code of Military Justice. *See* 10 U.S.C. §§ 801-946. One of the violations was larceny of military property (a theft offense). *See* 10 U.S.C. § 921. Consistent with the military's then-traditional practice of unitary sentencing (*i.e.*, imposing a single sentence for all charges and specifications of which an accused is convicted), the military judge issued a general sentence that imposed as punishment for all four of Persad's convictions a term of 30 months' confinement, undifferentiated among the four violations to which he pleaded. The Immigration Judge and the Board of Immigration Appeals ("BIA") determined that this sentence satisfied Section 1101(a)(43)(G). On petition for review, Persad argues that the unitary sentencing scheme employed by the military tribunal precludes the government from showing by clear and convincing evidence that the theft count, alone, resulted in a sentence of 12 or more months' confinement. Resolving this question of first impression in our Circuit, we agree with Persad. We therefore GRANT Persad's petition and REMAND the cause to the BIA for further proceedings consistent herewith.

ALEXANDER J. SEGAL, Esq., The Law Offices of Grinberg & Segal, P.L.L.C., New York, N.Y., *for Dasrath D. Persad*.

MATTHEW B. GEORGE, Trial Attorney (Chad A. Readler, Acting Assistant Attorney General & Douglas E. Ginsburg, Assistant Director, *on the brief*), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., *for William P. Barr, United States Attorney General*.

CARNEY, *Circuit Judge*:

Dasrath D. Persad ("Persad"), a legal permanent resident, petitions for review of an agency order requiring his removal to Trinidad and Tobago. The agency's decision rested on its determination that Persad had committed an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43)(G).[1] To establish an aggravated felony under that statutory provision, the government must show by clear and convincing evidence that a noncitizen committed a "theft offense" that resulted in a term of imprisonment of "at least one year." 8 § 1101(a)(43)(G). In his 1992 court-martial, Persad—then a member of the U.S. Army—pleaded guilty to four violations of the Uniform Code of Military Justice ("UCMJ"). *See* 10 U.S.C. §§ 801-946. One of those violations was larceny of military property (a theft offense). *See* 10 U.S.C. § 921. Consistent with the military's then-customary practice of unitary sentencing (*i.e.*, imposing a single sentence for all charges and specifications of which an accused is convicted), the military judge issued a general sentence that imposed as punishment for all four of Persad's convictions a term of 30 months' confinement, undifferentiated among the four violations to which he pleaded.[2] The Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") determined that this sentence satisfied Section 1101(a)(43)(G).

---

[1] Unless otherwise noted, when quoting sources, all internal quotation marks and citations are omitted.

[2] We note at the outset that the unitary sentencing scheme outlined above and described in greater detail below was substantially amended by the Military Justice Act of 2016, Pub. L. No. 114-328, § 5301, 130 Stat. 2919, 2919-2920. Under the Military Justice Act, when an accused elects to be sentenced by a military judge, the judge must, "with respect to each offense of which the accused is found guilty, specify the term of confinement, if any, and the amount of the fine, if any." 10 U.S.C. § 856(c)(2); *see also* Rule 1002(d)(2)(A) of the Rules for Courts-Martial, *Manual for Courts-Martial United States* (2019 ed.), at II-145. In such instances, the judge must also "specify

On petition for review, Persad argues that the unitary sentencing scheme employed by the military tribunal precludes the government from showing by clear and convincing evidence that the theft count, alone, resulted in a sentence of 12 or more months' confinement. He contends that any post-hoc scheme devised to apportion the sentence among the counts could be based only on conjecture. For its part, the government offers no substantial defense of the agency's decision to treat the 30-month sentence as applying in full to each of the four counts of conviction. Rather, the government merely seeks remand to allow the agency to provide a more robust analysis.[3]

Resolving this question of first impression in our Circuit, we hold that, under the military's traditional unitary sentencing scheme, a military judgment in which a single sentence of confinement is imposed in connection with multiple counts of conviction may not be presumed to be equivalent to equal, full-term, concurrent sentences as to each count of conviction. We therefore agree with Persad that the government has not

---

whether the terms of confinement are to run consecutively or concurrently." 10 U.S.C. § 856(c)(3); *see also* Rule 1002(d)(2)(B) of the Rules for Courts-Martial, *Manual for Courts-Martial United States* (2019 ed.), at II-145. When an accused elects to be sentenced by members of the court-martial, however, the unitary scheme stands, and the members "shall announce a single sentence for all of the offenses of which the accused was found guilty." 10 U.S.C. § 856(c)(3); *see also* Rule 1002(d)(1) of the Rules for Courts-Martial, *Manual for Courts-Martial United States* (2019 ed.), at II-145.

[3] The agency, in concluding that a general sentence applies to each of multiple counts of conviction, relied primarily on its 1948 decision in *Matter of S—*, 3 I. & N. Dec. 460 (BIA 1948). It summarily rejected the recent analysis of unitary sentences issued by the Third Circuit in *Chavez-Alvarez v. Attorney General*, 783 F.3d 478, 484 (3d Cir. 2015) ("When a general sentence is issued by a military tribunal, it is typically conjectural what sentence the court-martial would have imposed for one charge in the absence of another."), stating only that, because Persad's case arose in the Second Circuit and not the Third, *Matter of S—* was still binding.

carried its burden, and on this basis we GRANT Persad's petition and REMAND the cause to the BIA for further proceedings consistent herewith.

## BACKGROUND

The relevant factual background is largely uncontested. The following description is drawn from the administrative record.

Persad is a native and citizen of the Republic of Trinidad and Tobago. He was admitted to the United States in 1986 on a student visa. In 1990, he enlisted in the U.S. Army and, three years later, in 1993, he became a legal permanent resident, effective retroactive to 1990.

His military service took him to Germany where, on February 7, 1992, he and two other enlistees were charged in military proceedings in connection with their theft, while on guard duty, of government property—specifically, two pair of night-vision goggles, a video cassette recorder, and a computer keyboard—and their subsequent wrongful disposal of that property. Persad's ensuing court-martial, which took place on April 13, 1992, was resolved by his entry of a guilty plea to violating four articles of the UCMJ[4]: (1) Article 80, attempt to sell military property; (2) Article 81, conspiracy to commit larceny of military property; (3) Article 108, unauthorized disposal of military property; and (4) Article 121, larceny of military property. His violations of Article 80 (attempted sale) and Article 108 (unauthorized disposal) were each punishable by a maximum of ten years' confinement; neither was subject to a minimum. *See Manual for*

---

[4] The congressionally enacted UCMJ is set forth in chapter 47 of title 10 of the United States Code. It establishes a separate substantive criminal code and justice system for persons serving in the U.S. military, and is implemented, in part, by the *Manual for Courts-Martial*, which is prescribed by Executive Order.

*Courts-Martial, United States* (1984 ed.) (the "*1984 Manual*"), IV-4-6 (Art. 80), IV-54-57 (Art. 108). His violations of Article 81 (larceny conspiracy) and Article 121 (larceny) were each punishable by a maximum of five years' confinement; neither of these, either, was subject to a minimum sentence of incarceration. *See id.*, IV-6-7 (Art. 81), IV-77-82 (Art. 121).

The military judge presiding at Persad's court-martial sentenced him to an undifferentiated total of 30 months' confinement, as well as to 30 months' wage garnishment, a reduction in grade, and a bad-conduct discharge. The judge did not link any part of Persad's total sentence to any individual offense. Rather, consistent with the military's traditional "unitary sentencing" practice (which we describe further, below), the judge simply announced the total period of confinement as part of the sentence imposed for the four convictions. Those convictions and the resulting sentence were approved by reviewing authorities within the U.S. Army in June, and affirmed in December of the same year.

Almost 20 years later, in a New York State prosecution brought in 2011, Persad—who, by then, had been a civilian for many years—pleaded guilty to one count of attempted menacing in the second degree in violation of New York Penal Law §§ 110 and 120.14. For this conviction, Persad was sentenced to 15 days' imprisonment and was ordered to comply with a two-year protection order. In the course of the following year, perhaps prompted by the attempted menacing misdemeanor conviction, the Department of Homeland Security ("DHS") began to pursue removal proceedings against Persad.

In November 2012, DHS charged Persad with four bases of removability found in title 8, including the two at issue here: first, under Section 1227(a)(2)(A)(ii), for having

been convicted of two or more crimes involving moral turpitude ("CIMTs"); and second, under Section 1227(a)(2)(A)(iii), for having been convicted of an "aggravated felony" under Section 1101(a)(43)(G), which (as noted above) includes "theft offense[s] . . . for which the term of imprisonment [is] at least one year." In 2013, DHS added more charges to the notice, and removed others, so that the proceedings focused on the CIMTs and aggravated felony charges just identified.

In response to the DHS action, Persad initially admitted that his UCMJ conviction for larceny was a "theft offense" and constituted an aggravated felony. In 2014, however, he moved to withdraw that concession and to terminate proceedings on the theory that, in light of the unitary sentence, the government had failed to establish that his larceny conviction was a "theft offense for which he was sentenced to a term of imprisonment *of at least one year*." App'x 178 (emphasis added). The IJ allowed Persad to withdraw his plea, but rejected his request to terminate the proceedings, finding itself bound by the BIA's 1948 decision in *Matter of S—*, 3 I. & N. Dec. 460 (BIA 1948), to treat the 30-month sentence of confinement as having been imposed equally on each of the four counts of conviction, including the theft offense. Thus, the IJ concluded that Persad's "general sentence of 30 months is applicable to *each* of his four convictions," and that his conviction for larceny of military property had correctly been characterized as an aggravated felony. App'x at 166 (emphasis in original).

In 2016, Persad renewed his motion to terminate the removal proceedings, reiterating his unitary sentencing argument. On this go-round, his position derived strong support from the Third Circuit's 2015 decision in *Chavez-Alvarez v. Attorney General*, 783 F.3d 478 (3d Cir. 2015), which rejected the BIA's reliance on *Matter of S—* for the proposition that unitary sentences must be presumed equivalent to concurrent

7

sentences of equal length imposed on each of multiple counts of a conviction covered by a single sentence. In a detailed and thoughtful opinion, the Third Circuit held that any federal law presumption that a general sentence applies equally and fully to each count in convictions on multiple counts—what it called the "long-standing presumption, when the record is silent, in favor of concurrent sentences"—has no bearing on general, unitary sentences imposed by military tribunals applying the UCMJ. *Chavez-Alvarez*, 783 F.3d at 485.

In ruling on the renewed motion to terminate, the IJ expressed some sympathy for Persad's argument, but denied his motion on the ground that BIA precedent in *Matter of S—* and *Matter of Chavez-Alvarez* were still binding for cases arising in the Second Circuit, even if that precedent had been repudiated by another circuit court. The IJ then, in June 2016, ordered Persad to be removed. Persad filed a notice of appeal the next month, but on February 8, 2017, the BIA affirmed the removal order in a single-member decision. The BIA agreed with the IJ that its 2016 decision in *Matter of Chavez-Alvarez*, applying the presumption of concurrent sentencing adopted in 1948 in *Matter of S—*, still governed immigration cases arising in the Second Circuit. It therefore dismissed Persad's appeal.

Persad timely petitioned this Court for review.

## DISCUSSION

Our court has jurisdiction under 8 U.S.C. § 1252(a) to review final orders of removal. When the agency's ground for removal is an immigrant's conviction for an aggravated felony, however, we may review the order only as to "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(C), (D).

Whether an offense committed by a noncitizen constitutes an aggravated felony presents a question of law that this Court has jurisdiction to consider. *See Santana v. Holder*, 714 F.3d 140, 143 (2d Cir. 2013); *Ming Sam Lui v. INS,* 250 F.3d 105, 110 (2d Cir. 2001). On review of this question, we consider both the decisions of the IJ and the BIA "for the sake of completeness," because the BIA largely recounted the reasoning of the IJ in affirming the IJ's decision. *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). Although we accord substantial deference to the BIA's interpretation of the Immigration and Nationality Act ("INA"), the statutory question whether a theft conviction qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G) contains elements of military criminal and sentencing law that lie outside the agency's area of expertise. We therefore review the BIA's decision *de novo*. *See Ming Lam Sui,* 250 F.3d at 112.

On appeal, Persad largely makes the same arguments about his unitary sentence that he unsuccessfully presented to the IJ and BIA, and that we sketched above. Also as noted above, the government's brief offers no substantial support of the BIA's decision, but rather seeks a remand to permit the BIA to expand on its rationale in *Matter of Chavez-Alvarez*.

For the following reasons, we agree with Persad that his 1992 unitary sentence under the UCMJ cannot reasonably be read as one imposing a sentence of a year or more for a theft offense and that the government has thus failed to carry its burden of proof. We therefore grant his petition for review.

I.   **Aggravated Felony Under the INA**

Any noncitizen who is "convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). As described above, the INA

defines "aggravated felony" to include "a theft offense . . . for which the term of imprisonment [is] at least one year." *Id.* § 1101(a)(43)(G). To prove that a noncitizen is subject to deportation on these grounds, the government must establish by "clear and convincing evidence" that he or she has committed such an offense. *Id.* § 1229a(c)(3)(A); *see also Nijhawan v. Holder*, 557 U.S. 29, 42 (2009) (explaining that, in deportation proceeding, government must prove its claim by clear and convincing evidence); *Woodby v. INS*, 385 U.S. 276, 286 (1966) (same).

Persad concedes that his conviction for larceny of military property is a "theft" offense, and he acknowledges that federal law applies a general presumption of concurrent sentencing. He argues, however, that the government has failed to establish that he was convicted of an aggravated felony because it has not, and cannot, demonstrate by clear and convincing evidence that he was sentenced to a term of imprisonment of at least one year for his larceny conviction.[5] The question before us, then, is whether the agency was correct in applying to unitary sentences issued under the UCMJ the established presumption, applicable to federal convictions, that, "unless otherwise stated a sentence imposed on a given count . . . is concurrent with other federal sentences then imposed or previously imposed." *United States v. Wenger*, 457 F.2d 1082, 1083 (2d Cir. 1972). We conclude that the agency erred in so doing, and that the federal presumption is not properly applied to unitary military sentencing, which is an equally venerable regime governed by a different presumption altogether.

---

[5] Neither the IJ nor the BIA addressed in their opinions whether any one or more of the three other UCMJ counts might also be a theft offense. We therefore do not address whether any of them is an aggravated felony. *See Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 122 (2d Cir. 2007) (holding that this Court "may consider only those issues that formed the basis for [the BIA's] decision").

A.     UCMJ "Unitary Sentencing" Regime

The Supreme Court has long acknowledged the traditional "requirement of military law that only the entry of a single gross sentence for [multiple] offenses is permitted." *Jackson v. Taylor*, 353 U.S. 569, 574 (1957) (citing *Winthrop*, Military Law and Precedents (2d ed. 1920)). In *Jackson*, the Court explained that sentences issued pursuant to a court-martial conviction were traditionally "not broken down as to offenses," but rather reflected a single, unitary punishment for all counts of conviction. *Id.* Addressing this topic in his authoritative treatise, first published in 1920, William Winthrop declared:

> In the absence of any statutory direction on the subject, usage has established that the sentence of a court-martial shall be, in every case, an *entirety*; that is to say that there shall be but a single sentence covering all the convictions on all the charges and specifications upon which the accused is found guilty, however separate and distinct may be the different offences found, and however different may be the punishments called for by the offences.

Winthrop, *supra*, at 404 (emphasis in original). Unitary military sentences were thus "to be entire and single," as Winthrop labelled his discussion.[6] *Id.*

---

[6] Although the rationale underlying the military's unitary sentencing practice is unclear, a 1956 Yale Law Journal student note undertook to explain it as follows:

> Gross sentence usage is the result of military exigency. There is no time in the military for the luxury of separate trials. Consequently, *all* charges and specifications against an accused, even if unrelated, must be charged and adjudicated in one proceeding. The military gross sentence usage recognizes the inadequacy of the lay court-martial to cope with technical problems of concurrent and consecutive sentencing—problems made more difficult by the unlimited joinder required in military law.

Thus, when Persad was sentenced in 1992 (as well as when Chavez-Alvarez was sentenced in 2000), sentencing practices under the *Manual for Courts-Martial* in effect at the time provided that "[a]ny member of [a court-martial] may propose a sentence" and each proposed sentence "shall contain the complete sentence proposed." Rule 1006(c) of the Rules for Courts-Martial ("Rule 1006(c)"), *1984 Manual*, at II-153. The appendix to the *1984 Manual* explained that this language was added to Rule 1006(c) to "recognize[] the unitary sentence concept" as described in *Jackson*. *1984 Manual*, at A21-67.

Indeed, the 2016 edition of the Rules for Courts-Martial similarly describes the unitary sentencing concept as explicitly *forbidding* the court-martial from "impos[ing] separate sentences for each finding of guilty," and instead permitting imposition of "only a single, unitary sentence covering all of the guilty findings in their entirety." Rule 1002(b) of the Rules for Courts-Martial, *Manual for Courts-Martial United States* (2016 ed.), at II-132.

Accordingly, although the unitary sentencing principle was not codified in the Rules of Courts-Martial until the *1984 Manual*, it was understood to be the "long practice" of military courts, "approved over the years by the Congress" and the Supreme Court. *Jackson*, 353 U.S. at 574. No one disputes that it was under this ancient practice that Persad was sentenced by his court-martial.

B.      Presumption of Concurrent Sentencing in Federal Sentencing Practice

In contrast to the use of unitary sentences in military courts, federal sentencing practice has long employed an "all but conclusive presumption . . . that unless

---

Note, *Habeas Corpus Review of Military "Gross Sentence" Usage*, 65 Yale L.J. 413, 413 n.1 (1956) (emphasis in original) (citations omitted).

otherwise stated a sentence imposed on a given count or indictment is concurrent with other federal sentences then imposed or previously imposed." *Wenger*, 457 F.2d at 1083. In 1931, the Ninth Circuit—in one of the earliest articulations of the federal law presumption—concluded that, where a single sentence was imposed as punishment for multiple counts of convictions, and "it being impossible to say on which count the sentence applied," the entire sentence "would be held to apply to all." *Martinez v. Nagle*, 53 F.2d 195, 197 (9th Cir. 1931). In other words, federal courts have presumed for decades that, unless otherwise indicated by the record or prohibited by law, the full length of a general sentence issued as to multiple counts of conviction applies to *each* of those counts.

This approach to interpreting a single sentence imposed on multiple counts of conviction is now reflected in the U.S. Sentencing Guidelines ("Guidelines" or "USSG"), which counsel that a single sentence imposed in the context of multiple counts of conviction does not reflect an aggregate of consecutive sentences, but rather multiple sentences of the same length, running concurrently. *See* USSG § 5G1.2. Thus, with certain statutory exceptions, the Guidelines direct federal courts to determine the "total punishment"—that is, the "combined length of the sentences to be imposed"—for all of the counts of conviction and then "impose that total punishment on each such count, except to the extent otherwise required by law." *Id.* & cmt. nn. 1, 3. Unless the highest maximum sentence among the counts is insufficient to justify the "total punishment," "the sentences on all counts shall run concurrently." *Id.* § 5G1.2(c), (d). (This, of course, does not necessarily mean that they all are of equal length, since each may be subject to a different minimum or maximum, but it counteracts any presumption that they should run consecutively.)

Additionally, the presumption has at least on occasion been applied in the immigration context. In 1948, the BIA in *Matter of S—* applied this presumption to a noncitizen's federal general sentence for three narcotics convictions entered at one time. Only one of those counts rendered him potentially deportable. *Matter of S—*, 3 I. & N. Dec. at 461. In concluding that the noncitizen's sentence on that one count had been to a term of imprisonment for one year or more, the BIA relied solely on the Ninth Circuit's 1931 decision in *Martinez*, noting:

> Where an indictment charges several distinct [federal] offenses in two or more counts it has been held that defendant cannot complain of a sentence on a general verdict which imposes punishment applicable to either offense without designating on which count it is based, because, it being impossible to say on which count the sentence applied, it would be held to apply to all.

*Matter of S—*, 3 I. & N. Dec. at 462. Thus, the BIA held that the noncitizen's "general sentence to imprisonment for a period of 15 months" applied to *each* of the three federal counts of conviction. *Id.*

As previously noted, in 2014, the BIA considered whether to apply the federal concurrent-sentencing presumption in the UCMJ context. In *Matter of Chavez-Alvarez*, the BIA concluded that Chavez-Alvarez—a legal permanent resident who pleaded guilty in a 2000 general court-martial to providing false statements, sodomy by force, and indecent assault—had committed an aggravated felony under 8 U.S.C. § 1101(a)(43)(F) when he was sentenced to 18 months' confinement. 26 I. & N. Dec. at 275. Although Chavez-Alvarez took the position that the unitary sentence format prevented the agency from demonstrating that he had received a sentence of a year or more on any individual count, the BIA determined that its precedent in *Matter of S—* controlled the question, compelling the agency to interpret the 18-month sentence as applicable to each of Chavez-Alvarez's three counts of conviction. *Id.* at 282.

14

C.     Unitary Sentencing and the Government's Burden of Proof

As the Third Circuit explained in its opinion in *Chavez-Alvarez*, the BIA's reliance on its earlier opinion in *Matter of S*—and the Ninth Circuit's opinion in *Martinez* is misplaced when interpreting a unitary UCMJ sentence. *Chavez-Alvarez*, 783 F.3d at 485. Those decisions "say[] nothing about general sentencing in the military and [are] based on concurrent sentencing in federal court." *Id.* We, too, are persuaded that, unlike in the federal sentencing arena, any attempt to apportion a unitary court-martial sentence among multiple counts of conviction is inherently speculative, barring some quirk of sentence maximums that allows persuasive after-the-fact deductive work such as is not available in Persad's case. In the context of Persad's four convictions in 1992 and unitary 30-month sentence, it simply cannot be shown by clear and convincing evidence, on the record before us, that he was sentenced for at least one year on his theft offense, disaggregated from the other three. That is because each of his four convictions carries a maximum sentence of at least five years, meaning his sentence could fairly be attributable to *any single one* of his convictions.

In some circumstances where a unitary sentence has been imposed, however, the government might be able to carry its burden. For example, if three of a defendant's four convictions carry maximum sentences of six months' imprisonment, and the fourth offense carries a maximum sentence of ten years, then necessarily at least 12 months of a 30-month sentence would be fairly attributable to the fourth offense. Similarly, if a defendant has been convicted of only two offenses, both of which are theft offenses, and if he is sentenced to a unitary 30 months' imprisonment, then necessarily at least one of those offenses would account for at least 12 months' imprisonment. In such instances, although it would be impossible to determine precisely what sentence is attributable to

15

a given offense, the government could reasonably be considered to have carried its burden of establishing that at least one qualifying offense resulted in 12 months or more of confinement. But such is not the case here.

## II.    Remand

In its briefing on appeal, the government does not address the merits of Persad's challenge to the agency's determination that he committed an aggravated felony. Rather, the government requests that we remand the case for the BIA to expand on its reasoning regarding "whether and how district court criminal sentencing presumptions as set out in *Matter of S—* extend to unitary military sentences and, if warranted, allow DHS to submit evidence regarding the apportionment of Persad's sentence." Resp't Br. at 11. A panel of this Court previously denied a government motion to remand, and we again find remand to be unnecessary. The BIA had an opportunity to develop and set forth its reasoning in *Matter of Chavez-Alvarez,* and then again when Persad renewed his motion to terminate after the *Matter of Chavez-Alvarez* decision was overturned by the Third Circuit. Instead, the agency merely noted, with no elaboration, that the decision remained binding in the Second Circuit.

In any event, as set out above, we review this issue of interpreting military sentencing practices *de novo*, and thus owe no deference to the BIA's reasoning. Finally, we see no benefit from remanding to allow for the government to collect further evidence as to the apportionment of Persad's UCMJ sentence. His UCMJ proceedings are well documented in the record on appeal, and we think it is extremely unlikely that yet-undiscovered evidence of any apportionment exists both because decades have passed and because the unitary sentencing scheme disallowed any such consideration.

16

We agree, however, that remand is required for the IJ to determine whether Persad is removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for having committed two or more CIMTs. Persad challenged this charge of removability before the IJ and BIA, but, having determined Persad to be removable on other grounds, neither decided the issue.[7]

## CONCLUSION

For the foregoing reasons, the petition is GRANTED and the cause is REMANDED for proceedings consistent with this Opinion.

---

[7] We further note that, while the IJ did not formally rule on the question, he acknowledged that he had "at least indicated" that he was not "inclined to find the CIMTs in this case." App'x at 98 (Imm. Ct. Hearing Trans., July 14, 2014).